[No. 56933-9.    En Banc.    October 17, 1991.]

HELEN E. VOGT, *Individually and as Personal Representative, Appellant,* v. SEATTLE-FIRST NATIONAL BANK, *Respondent.*

542

*Dan R. Young* and *Bjorklund & Young*, for appellant.

*Stuart R. Dunwoody, Ladd B. Leavens, Bruce Campbell,* and *Davis Wright Tremaine*, for respondent.

SMITH, J. — Appellant Helen E. Vogt, individually and as personal representative of the estate of Nellie Vogt, asks this court to determine the correctness of that portion of a

summary judgment by the King County Superior Court which held that the activities of Respondent Seattle-First National Bank in administering the Emma Frye Trust are exempt from the Consumer Protection Act, RCW 19.86, and that the federal Comptroller of the Currency has primary jurisdiction over those activities, thus preempting the states from assuming jurisdiction.

We reverse the trial court and determine that, as to Appellant Vogt's claims against Seattle-First National Bank, the Consumer Protection Act is not preempted by federal statutes granting authority to the Comptroller of the Currency and that primary jurisdiction over appellant's Consumer Protection Act claims does not rest with the Comptroller of the Currency.

In 1933, Ms. Emma Frye created a testamentary trust with property consisting primarily of approximately 10 warehouses located in Seattle in an area near what is now the Kingdome. Seattle-First National Bank (Seafirst) became trustee of the trust in 1953. Since that time, it has managed the warehouse properties owned by the Emma Frye Trust (Frye Trust). Trust beneficiaries were family members who increased in numbers over the years to approximately 23. Appellant Helen E. Vogt is one of these beneficiaries. Her interest in the trust was vested in February 1982 upon the death of her mother, Mrs. Nellie Vogt.

In December 1987, Appellant Helen E. Vogt filed a class action in the King County Superior Court on behalf of herself and other trust beneficiaries. The complaint made three claims: (1) that Seattle-First National Bank for years had invested trust assets, but failed to invest income from those assets by placing them in a noninterest bearing checking account; (2) that Seattle-First National Bank charged the Frye Trust excessive and unreasonable "extraordinary fees" which were not documented; and (3) that Seattle-First National Bank breached its trust in

selling one of the warehouses in 1980. Additionally, the complaint stated that failure to invest trust income and excessive fees were part of a generalized pattern which was unfair and deceptive in violation of the Consumer Protection Act.

The case was preassigned to the Honorable Nancy Ann Holman for all pretrial proceedings and trial. Seafirst moved for partial summary judgment on the claims under the Consumer Protection Act. In that motion, the bank asserted that it was a national bank and not subject to the Consumer Protection Act because federal law preempts the State's Consumer Protection Act; and that the doctrine of primary jurisdiction precludes judicial review of Seafirst's conduct under that act.

The trial court granted summary judgment dismissing Ms. Vogt's claims against Seafirst under the Consumer Protection Act, and subsequently denied certification of the lawsuit as a class action. Appellant Vogt timely filed a motion for discretionary review in this court. We denied that review on November 8, 1988.

The remaining claims proceeded in the superior court as an individual action. Seafirst settled the failure-to-invest claim on the first day of trial for $120,000. Appellant Vogt also on that day voluntarily dismissed her claim concerning sale of the warehouse in 1980. The parties went to trial only on the claim that Seafirst's extraordinary fees were excessive, unreasonable and undocumented and were in violation of the Consumer Protection Act, RCW 19.86.

Following a 14-day bench trial, the court in a comprehensive document entered 199 findings of fact, 50 conclusions of law and a judgment in favor of Appellant Helen E. Vogt. The court found that several of Seafirst's fees were "arbitrary and exorbitant," bore "no relation to any work done whatever" and had "no documentation whatever."[1] Pertinent findings of fact and conclusions of law are:

(1) During the nine year period 1972-1980, Seafirst charged the Frye Trust an extraordinary fee at least fourteen

---

[1]Finding of fact 142.

times for property lease renewals. Otherwise, from 1953-1988 only two other extraordinary fees were assessed the Frye Trust for a lease renewal, and those involved some documentation that specific extraordinary services had been involved. . . .[2]

(2) A very disturbing pattern of trustee fees being paid by the trust is apparent during the period 1970-1980. The extraordinary fees were unsupported and alone amounted to $26,078.40 between 1970 and 1980. The fee for the sale of 1217 Sixth Avenue South was another $22,900.00. Together that totals $48,978.40. The total of extraordinary fees charged between 1954 and 1969 was $4,590.00. Seafirst provided no justification as to the reasons for the considerable increase in the amount of extraordinary fees after 1970.[3]

(3) The Frye Trust is one of the smaller, less fee productive trusts. During the decade from 1970 to 1980 Seafirst felt pressures due to very low fees on its marketable security trusts and low income from real estate trusts of a smaller nature, in addition to some market problems the bank was experiencing. As a result, there was pressure to improve the fee yield from the Frye Trust. Some specific goals were alluded to and were later dropped. However, it is clear that there was an outside property management rationalization made for the extraordinary fees charged in this period. Such fees are not supportable by any theory in Seafirst's fee schedules, and were charged at times that benefitted the trustee rather than the beneficiary who had to wait for annual distributions. . . .[4]

(4) Seafirst managed all accumulated income held for distribution up until the time of distribution. It does not seem to be unreasonable in view of no direction otherwise from any source for Seafirst to assess fees on funds held for distribution. However, under the circumstances of this case, in view of the amount of annual fees charged on income and on assets other than reinvested earnings during those years, Seafirst should not include reinvested income within the value of personal property for purposes of calculating its annual fee. It was improper for Seafirst to include income within the value of personal property for purposes of calculating its annual fee. Seafirst was in effect charging twice on the same income, which was unreasonable and not provided for in Seafirst's fee schedules.[5]

---

[2]Finding of fact 170.

[3]Finding of fact 171.

[4]Finding of fact 173.

[5]Finding of fact 177.

(5) The fee for plaintiff's attorney calculated in Findings of Fact 178 and 179 by multiplying a reasonable hourly rate by hours reasonably expended (the "lodestar") should not be increased to compensate for contingency of success. The case is not a Consumer Protection Act action, nor is it touched with a special, statutorily established, public-interest recovery justifying application of a contingency multiplier. Moreover, the lodestar is quite substantial without application of a contingency multiplier.[6]

(6) The extraordinary fees Seafirst charged between 1970 and 1980 are not supportable by any theory in Seafirst's fee schedules, and were charged at times that benefitted the trustee rather than the beneficiary who had to wait for annual distributions. The trustee likewise should have charged all its fees on an annual basis, as required by the trust instrument.[7]

(7) Seafirst fee schedules make no provision for charging an asset management fee on earnings. When Seafirst included earnings in such fee, its fees exceeded its own fee schedules and were unreasonable.[8]

(8) All excessive extraordinary fees charged the trust (with the sole exception of the $22,900 fee charged in 1980) were willful, deliberate, without authority, and an egregious breach of trust. Such excessive fees as set forth herein should be repaid as provided herein at compound interest at the judgment rate in effect during the period in question. A summary for the amounts to be restored to the trust (including interest) and the calculations of interest are shown in Exhibit B attached hereto.[9]

(9) Seafirst had a duty to provide information in a form susceptible to comprehension by the beneficiaries. The annual statements sent to the beneficiaries were computer printouts of receipts and expenditures, without segregation by property and without any but the most general identification of extraordinary fees, thus rendering them incomplete and uninformative to a reasonable beneficiary.[10]

In its judgment the trial court awarded $183,511.41 plus interest to Appellant Vogt for attorneys' fees and costs;

---

[6]Finding of fact 186.

[7]Conclusion of law 5.

[8]Conclusion of law 6.

[9]Conclusion of law 9.

[10]Conclusion of law 11.

awarded $56,229.40 to Seafirst for attorneys' fees and costs arising out of its defense of Appellant Vogt's Consumer Protection Act claims; and required Seafirst to pay to the Frye Trust and certain beneficiaries $90,311.90 plus interest after deduction of attorneys' fees and costs awarded the bank.[11]

In arriving at attorneys' fees awarded to Appellant Vogt, the trial court used the "lodestar"[12] approach and considered the reasonable number of hours expended, multiplied by her attorney's reasonable hourly rate. Counsel for appellant also requested a multiplier because the fee was wholly contingent on the outcome of the case, but the trial court determined that the "case is not a Consumer Protection Act action, nor is it touched with a special, statutorily established, public-interest recovery justifying application of a contingency multiplier."[13]

Appellant Vogt then sought direct review of the judgment dismissing her Consumer Protection Act claims. We granted review.

The sole question presented by this case is whether the activities of Respondent Seattle-First · National Bank in administering the Frye Trust, which were the bases for Appellant Helen E. Vogt's Consumer Protection Act claims, are exempt from the Consumer Protection Act, RCW 19.86, and whether those activities are subject to the primary jurisdiction of the federal banking regulator, the Comptroller of the Currency.

RCW 19.86.170 provides in part that:

> Nothing in this chapter shall apply to actions or transactions otherwise permitted, prohibited or regulated under

---

[11]The $56,229.40 and $90,311.90 do not total $183,511.41, but the court order is not clear on the difference.

[12]See *Scott Fetzer Co. v. Weeks*, 114 Wn.2d 109, 786 P.2d 265 (1990); *Rice v. Janovich*, 109 Wn.2d 48, 742 P.2d 1230 (1987); *Bowers v. Transamerica Title Ins. Co.*, 100 Wn.2d 581, 675 P.2d 193 (1983).

[13]Finding of fact 186.

laws administered by the insurance commissioner of this state, the Washington utilities and transportation commission, the federal power commission or actions or transactions permitted by any other regulatory body or officer acting under statutory authority of this state or the United States. . ..

"[T]he Consumer Protection Act should be liberally construed to effect its purpose, in accordance with the direction contained in RCW 19.86.920."[14] In stating the purpose and interpretation of the act, RCW 19.86.920 provides that:

> The legislature hereby declares that the purpose of this act is to complement the body of federal law governing restraints of trade, unfair competition and unfair, deceptive, and fraudulent acts or practices in order to protect the public and foster fair and honest competition. It is the intent of the legislature that, in construing this act, the courts be guided by final decisions of the federal courts and final orders of the federal trade commission interpreting the various federal statutes dealing with the same or similar matters and that in deciding whether conduct restrains or monopolizes trade or commerce or may substantially lessen competition, determination of the relevant market or effective area of competition shall not be limited by the boundaries of the state of Washington. To this end this act shall be liberally construed that its beneficial purposes may be served.
>
> It is, however, the intent of the legislature that this act shall not be construed to prohibit acts or practices which are reasonable in relation to the development and preservation of business or which are not injurious to the public interest, nor be construed to authorize those acts or practices which unreasonably restrain trade or are unreasonable per se.

In the order dismissing Appellant Vogt's Consumer Protection Act claims, the trial court held that the actions of Seafirst "are exempt from the application of the Consumer Protection Act."[15]

Appellant Vogt argues that the trial court erred in exempting Seafirst from application of the act because

---

[14]*Dick v. Attorney General*, 83 Wn.2d 684, 688, 521 P.2d 702 (1974) (citing *State v. Ralph Williams' North West Chrysler Plymouth, Inc.*, 82 Wn.2d 265, 510 P.2d 233, 59 A.L.R.3d 1209 (1973)).

[15]Conclusion of law 11.

federal national bank regulators have never "permitted" Seafirst to charge "extraordinary" trustee fees for the routine management of trust property.

Seafirst contends that the trial court actually decided that Appellant Vogt's Consumer Protection Act claims are subject to the "primary jurisdiction" of the federal regulators, in spite of the actual language of the trial court's written order. Seafirst relies on the oral statement of the trial court that it felt bound by the Court of Appeals decision in *Tokarz v. Frontier Fed. Sav. & Loan Ass'n.*[16]

In *Tokarz*, the Court of Appeals, Division Three, held that primary jurisdiction over Consumer Protection Act claims against a savings and loan association rests with the Federal Home Loan Bank Board.[17] In that case, Frontier Savings and Loan Association contended that it was exempt from the Consumer Protection Act, RCW 19.86, particularly RCW 19.86.170, because the association was exclusively regulated by federal law.[18] The court noted that the Federal Home Loan Bank Board was authorized to prescribe rules and regulations governing virtually every aspect of federal savings and loan association activity. The court then set forth the elements of primary jurisdiction. The court concluded simply that jurisdiction of the Federal Home Loan Bank Board met the requirements of primary jurisdiction[19] and that "primary jurisdiction lies with the FHLBB and Frontier is therefore exempt from the Consumer Protection Act."[20] Savings and loan associations are banking institutions, but nevertheless are entities distinguishable from national banks. Rules and regulations of the Federal Home Loan Bank Board, which regulates

---

[16]33 Wn. App. 456, 656 P.2d 1089 (1982).

[17]*Tokarz*, at 465-66.

[18]*Tokarz*, at 464.

[19]*Tokarz*, at 465.

[20]*Tokarz*, at 465.

savings and loan associations, must be distinguished from rules and regulations of the Comptroller of the Currency, which regulates national banks. *Tokarz*, therefore, is not reliable authority for the conclusion reached by the trial court in this case.

The Comptroller of the Currency is charged with regulating national banks. Under its authority, the Comptroller may permit national banks:

> [W]hen not in contravention of State or local law, the right to act as trustee . . . or in any other fiduciary capacity in which State banks, trust companies, or other corporations which come into competition with national banks are permitted to act under the laws of the State in which the national bank is located.[21]

The Comptroller of the Currency promulgates regulations governing the fiduciary powers of national banks. One such regulation provides that:

> If the amount of the compensation for acting in a fiduciary capacity is not regulated by local law or provided for in the instrument creating the fiduciary relationship or otherwise agreed to by the parties, a national bank acting in such capacity may charge or deduct a reasonable compensation for its services.[22]

Appellant claims that the trial court erred in ruling on preemption because federal banking regulators have not "permitted" Seafirst to engage in the trustee fee practices which are the bases of her claims. Respondent Seafirst argues that, as specified under RCW 19.86.170, this regulation gives it "permission" to engage in the trustee fee practices which appellant claims are violations of the Consumer Protection Act.

■ In *Dick*, the court stated that the proper approach to an exemption issue is to analyze whether the action or

---

[21]12 U.S.C. § 92a(a).

[22]12 C.F.R. § 9.15(a).

transaction in question was itself the subject of permission, prohibition or regulation before exempting the conduct.[23] While the *Dick* appeal was pending, the Legislature considered an amendment to narrow the exculpatory provisions of the Consumer Protection Act. The amendment was approved 4 days after this court's decision in the *Dick* case in 1974. The amendment mainly affected the scope of the exemption available to, and the jurisdiction of the courts over, those industries regulated by "other" regulatory bodies or officers.[24] Dr. Harold Dick was a naturopath who claimed that his "drugless healing" practice was not subject to the Consumer Protection Act because his practice was regulated by the Director of Licenses under RCW 18.36. The exemption upon which the appellant in *Dick* relied and which this court approved in 1974 would under the current Consumer Protection Act be allowed only if the activity is "specifically permitted within the statutory authority granted to any regulatory board or commission established within Title 18 RCW . . . ".[25]

The analytical concept discussed in *Dick* remains intact even after the 1974 amendment. Exemption under the Consumer Protection Act is applied only after determining whether the specific action is permitted, prohibited, regulated or required by a regulatory body or statute.[26]

Seafirst asserts that mere acquiescence by a regulating agency in a practice by a national bank constitutes "permission". The bank further argues that another portion of RCW 19.86.170 exempts actions or transactions

---

[23]*Dick v. Attorney General, supra.*

[24]RCW 19.86.170.

[25]RCW 19.86.170.

[26]Comment, *The Scope of the Regulated Industries Exemption Under the Washington Consumer Protection Act*, 10 Gonz. L. Rev. 415, 421-23 (1974-1975).

"specifically permitted" within the statutory authority granted to any regulatory board or commission under RCW Title 18. Thus, Seafirst argues that, as a matter of statutory construction, "permission" requires a lesser showing than "specific permission".

■■ This court in *In re Real Estate Brokerage Antitrust Litig.*[27] addressed the meaning of "specifically permitted" under the 1974 amendment to the Consumer Protection Act, RCW 19.86.170. The court determined that under that portion of the statute, an agency must take "overt affirmative actions specifically to permit the actions or transactions engaged in" by the person or entity involved in a Consumer Protection Act complaint.[28]

Overly broad construction of "permission" may conflict with the Legislature's intent that the Consumer Protection Act be liberally construed so that its beneficial purposes may be served.[29] "Liberal construction" is a command that the coverage of an act's provisions in fact be liberally construed and that its exceptions be narrowly confined.[30]

Seafirst contends that 12 C.F.R. § 9.15(a) gives it "permission" to engage in the trustee fee practices upon which Appellant Vogt's Consumer Protection Act claims are made. Seafirst states that its authority to charge reasonable fees for services constitutes a permitted "action or transaction." RCW 19.86.170 does not exempt actions or transactions merely because they are regulated generally. The exemption applies only if the particular practice found to be unfair or deceptive is specifically permitted, prohibited or regulated.[31]

---

[27] 95 Wn.2d 297, 622 P.2d 1185 (1980).

[28] *Real Estate*, at 301.

[29] RCW 19.86.920.

[30] *Nucleonics Alliance, Local Union 1-369 v. WPPSS*, 101 Wn.2d 24, 29, 677 P.2d 108 (1984).

[31] *See Dick*, at 688. *See also In re Real Estate Brokerage Antitrust Litig.*, at 301.

The regulation issued by the Comptroller of the Currency under 12 C.F.R. § 9.15(a) is effectuated only if compensation of the Seafirst trustee is not regulated by local law, is not authorized in the instrument creating the trust, or is not otherwise agreed upon.[32] The Frye Trust authorized Seafirst as trustee to "receive reasonable compensation for his [sic] services which compensation shall be charged and paid annually."

▇▇ In determining whether state laws are preempted, this court in *Detonics ".45" Assocs. v. Bank of Cal.* adopted the language of a United States Supreme Court case, *Hines v. Davidowitz*.[33] The test articulated was whether under the circumstances of a particular case, state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.[34] A national bank is subject to state law unless that law interferes with the purposes of its creation, or destroys its efficiency, or is in conflict with some paramount federal law.[35] In *Detonics*, this court concluded that there was no conflict between the National Bank Act and the relevant Consumer Protection Act section providing for attorneys' fees and costs in usurious transactions. The court reasoned that the statutory allowance of attorneys' fees in that case did not in any manner jeopardize the national banking system.[36]

Although the Comptroller of the Currency has regulatory and supervisory authority over national banks, that authority alone does not result in exemption under the Consumer Protection Act for Seafirst in this case. Its

---

[32]12 C.F.R. § 9.15(a).

[33]97 Wn.2d 351, 355, 644 P.2d 1170 (1982) (citing *Hines v. Davidowitz*, 312 U.S. 52, 85 L. Ed. 581, 61 S. Ct. 399 (1941)).

[34]*Detonics*, at 355.

[35]*Detonics* (citing *Lewis v. Fidelity & Deposit Co.*, 292 U.S. 559, 78 L. Ed. 1425, 54 S. Ct. 848, 92 A.L.R. 794 (1941)).

[36]*Detonics*, at 355.

conduct as trustee is not preempted by federal regulation and thus is subject to the Consumer Protection Act.

## PRIMARY JURISDICTION

■ When both a court and an agency have jurisdiction over a matter, the doctrine of primary jurisdiction determines whether the court or the agency should make the initial decision.[37] The court will usually defer to agency jurisdiction if enforcement of a private claim involves a factual question requiring expertise that the courts do not have or involves an area where a uniform determination is desirable.[38] No fixed formula exists for determining when the doctrine of primary jurisdiction should be applied.[39]

Appellant argues that the trial court erred when it held that primary jurisdiction over her unfair practice claims resides with the Comptroller of the Currency. In *In re Real Estate Brokerage Antitrust Litig.*[40] this court stated three factors governing application of the doctrine of primary jurisdiction:

1. The administrative agency has the authority to resolve issues that would be referred to it by the court;

2. The agency must have special competence over all or some part of the controversy which renders the agency better able than the court to resolve the issues; and

3. The claim before the court must involve issues that fall within the scope of a pervasive regulatory scheme so that the danger exists that judicial action would conflict with the regulatory scheme.[41]

---

[37]*See Nader v. Allegheny Airlines, Inc.,* 426 U.S. 290, 48 L. Ed. 2d 643, 96 S. Ct. 1978 (1976); Berendt & Kendall, *Administrative Law: Judicial Review — Reflections on the Proper Relationship Between Courts and Agencies,* 58 Chi.[-]Kent L. Rev. at 215, 236 (1981-1982).

[38]58 Chi.[-]Kent L. Rev. at 236.

[39]*Oasis Petroleum Corp. v. United States Dep't of Energy,* 718 F.2d 1558 (Temp. Emer. Ct. App. 1983).

[40]95 Wn.2d 297, 622 P.2d 1185 (1980).

[41]*Real Estate,* at 302-03.

■ With respect to the *first factor*: The Comptroller of the Currency has authority to resolve questions of unfair and deceptive practices by national banks.[42] The Board of Governors of the Federal Reserve System is authorized to prescribe regulations to carry out this authority and to define unfair or deceptive acts or practices.[43] The Comptroller enforces compliance with these provisions under its general enforcement authority.[44] Thus, the Comptroller may issue cease and desist orders requiring a bank to take affirmative action to correct the conditions resulting from any violation of the banking laws.[45] The bank may even be required to make restitution.[46] Additionally, the Comptroller has promulgated rules of practice and procedure governing hearings before it.[47] "[A]n administrative agency should not be accorded primary jurisdiction if the agency is powerless to grant the relief requested."[48] *When Appellant Vogt filed her complaint in 1987, the Comptroller did not have express authority to order restitution because that authority was not given until 1989.*[49] The Comptroller does not have the authority to award attorneys' fees and treble damages, but such an award is available under the Consumer Protection Act.

With respect to the *second factor*: Appellant Vogt contends that the Comptroller of the Currency has no special competence in the area of unfair and deceptive trust practices. Although the Board of Governors of the Federal

---

[42]15 U.S.C. § 57a(f)(1).

[43]15 U.S.C. § 57a(f)(1).

[44]15 U.S.C. § 57a(f)(2)(A).

[45]12 U.S.C. § 1818(b)(1).

[46]12 U.S.C. § 1818(b)(6).

[47]12 C.F.R. § 19 (1991).

[48]*In re Real Estate Brokerage Antitrust Litig., supra* at 304.

[49]Pub. L. No. 101-73, 103 Stat. 183 (1989).

Reserve System is empowered to prescribe regulations defining unfair and deceptive practices in the banking industry, no regulations relating to fiduciary duties of national banks have been promulgated. National banks are subject to state restrictions generally applicable to all fiduciaries.[50] Seafirst offers no explanation justifying a conclusion that the Comptroller would be better able than the Washington courts to determine whether the bank managed the Frye Trust in an unfair or deceptive manner.

With respect to the *third factor*: The Comptroller of the Currency has issued directives recognizing the concurrent authority of the states to regulate trust activities of national banks.[51] The Comptroller has also noted that "[C]ongress chose a structure that relies on the scope of local laws to establish the outer boundaries of a national bank's authority."[52] Congress did not intend to permit an imbalance in favor of national banks by allowing their powers to exceed those of state banks.[53] Federal law defining the fiduciary powers of national banks "does not limit the authority of the state [*sic*] to develop their own laws with regard to fiduciary activities."[54] The states "remain free to impose restrictions of general applicability on all fiduciaries under the law of the jurisdiction, including national bank trustees."[55] In granting fiduciary powers to national banks, Congress chose a structure that relies on local laws to establish the outer boundaries of a national

---

[50]Comptroller Letter, [1990-1991 Transfer Binder] Fed. Banking L. Rep. (CCH) ¶ 83,236, at 71,312 (1990).

[51]12 C.F.R. § 9.10 (1991).

[52]Comptroller Letter, [1990-1991 Transfer Binder] Fed. Banking L. Rep. (CCH) ¶ 83,236, at 71,312 (1990).

[53]Fed. Banking L. Rep., 71,312.

[54]Fed. Banking L. Rep., 71,312.

[55]Fed. Banking L. Rep., 71,312.

bank's authority.[56] Federal laws of this type clearly are affected by state law.[57]

## ATTORNEYS' FEES

█ The trial court awarded attorneys' fees and costs to Seafirst for its defense of Appellant Vogt's Consumer Protection Act claims. Under RCW 19.86.090, only the claimant is authorized to recover attorneys' fees.[58] The award to Seafirst was without statutory authority.

We reverse the summary judgment order of the trial court on the preemption and primary jurisdiction issues as they relate to Appellant Helen E. Vogt's claims against Seafirst under the Consumer Protection Act. The Consumer Protection Act is not preempted by statutes authorizing the Comptroller of the Currency to regulate state banks. Primary jurisdiction over Appellant Vogt's Consumer Protection Act claims does not rest with the Comptroller of the Currency. We reverse also the trial court's award of attorneys' fees and costs to Seafirst.

DORE, C.J., and BRACHTENBACH, DOLLIVER, DURHAM, GUY, and JOHNSON, JJ., concur.

ANDERSEN, J., concurs in the result.

Reconsideration denied December 11, 1991.

---

[56]Fed. Banking L. Rep., 71,312.

[57]Fed. Banking L. Rep., 71,312.

[58]*Sato v. Century 21 Ocean Shores Real Estate*, 101 Wn.2d 599, 681 P.2d 242 (1984).