[No. 37826-1-I.   Division One.   August 25, 1997.]

D.J. HOPKINS, INC., *Appellant*, v. GTE NORTHWEST, INC., *Respondent*.

2

*Steve W. Berman, Sean R. Matt,* and *Erin K. Flory* of *Hagens & Berman,* for appellant.

*Timothy J. O'Connell* of *GTE Northwest, Inc.*; and *Stevan D. Phillips* and *Jill D. Bowman* of *Stoel Rives Boley Jones & Grey,* for respondent.

GROSSE, J. — After partial deregulation of phone companies, D.J. Hopkins Inc. (Hopkins), a customer of GTE Northwest, Inc. (GTE), chose to use its own telephone rather than one leased by GTE. However, for a period of over nine years its telephone bill continued to contain a charge for "UNREG LEASE/MAINT" for the leasing of a desk telephone. Nevertheless, because GTE's billing practices remain regulated, Hopkins' Consumer Protection Act (CPA) claim for deceptive billing practices is exempt from application of the CPA. Further, under the doctrine of primary jurisdiction, Hopkins' claims for breach of contract, negligent misrepresentation, and injunctive relief must be referred to the regulatory agency for an initial decision.

In 1985 telephone customers of many different phone companies were able to choose whether to buy their own phones or to continue to use phones provided by the phone company. GTE was one of those companies. GTE initiated a separate monthly billing or leasing charge of $3.95 for customers who continued to use GTE telephones. The description of this charge on the monthly bill was listed as "UNREG LEASE/MAINT."

Hopkins was a GTE customer who was billed for a telephone lease, although in fact it did not have a telephone provided by GTE. Nine years after continuous billing for the phone, GTE changed the heading of the charge from

"UNREG LEASE/MAINT" to "Desk Phone." At that time Hopkins inquired about the charge and discovered it had been paying a lease fee for nine years when it did not lease a phone from GTE. Hopkins brought the improper charge to the attention of GTE and GTE agreed to discontinue charging Hopkins, offering a partial refund of the fees charged. Hopkins demanded a full refund of all the charges plus interest. GTE refused.

Hopkins asserts that GTE's practice is widespread and that GTE's conduct operates as an unfair and deceptive practice in violation of the CPA. In addition, Hopkins sought damages equal to the "UNREG LEASE/MAINT" charges based on a breach of contract theory. It also claims GTE was guilty of negligent misrepresentation by its deceptive billing procedure and because it failed to disclose that the language described charges for leased telephones. Further, Hopkins requested a mandatory injunction requiring GTE to discontinue its deceptive and unfair business practice.

This court reviews *de novo* the trial court's dismissal of the CPA claim, and other claims, as a matter of law, to the extent they were dismissed pursuant to CR 12(b)(6).[1] As to the trial court's application of the doctrine of primary jurisdiction, declining to exercise jurisdiction, the decision is reviewed for an abuse of discretion.[2]

Initially, we must determine whether the trial court was correct in dismissing Hopkins' CPA claim against GTE for deceptive billing practices on the ground that billings are regulated by the Washington Utilities and Transportation Commission (WUTC), and therefore exempt from CPA claims. The answer to this issue highlights a difference in the positions of the majority and concurring decision in

---

[1]*Hoffer v. State*, 110 Wn.2d 415, 420, 755 P.2d 781 (1988).

[2]*State ex rel. Graham v. Northshore Sch. Dist. No. 417*, 99 Wn.2d 232, 242, 662 P.2d 38 (1983); *Kerr v. Department of Game*, 14 Wn. App. 427, 429, 542 P.2d 467 (1975), *review denied*, 86 Wn.2d 1013 (1976); *see also In re Real Estate Brokerage Antitrust Litig.*, 95 Wn.2d 297, 305, 622 P.2d 1185 (1980).

*Tanner Elec. Coop. v. Puget Sound Power & Light*,[3] regarding the statutory exemption from application of the CPA of regulated industries. In pertinent part, RCW 19.86.170 provides:

> Nothing in this chapter shall apply to actions or transactions otherwise permitted, prohibited or regulated under laws administered by the insurance commissioner of this state, the Washington utilities and transportation commission, the federal power commission or actions or transactions permitted by any other regulatory body or officer acting under statutory authority of this state or the United States . . . .

■ ■ The majority opinion in *Tanner*, an electric company service agreement case, gives a broad meaning and application to the above exemption section of the CPA. "The exemption extends to actions that are *permitted, prohibited or regulated* by the WUTC, not just actions permitted by the WUTC."[4] Thus, under *Tanner*, Hopkins' argument that the exemption is inapplicable because the WUTC does not extensively regulate billing practices and does not specifically regulate customer premises equipment anymore, must fail. The CPA claim was dismissed on the ground that GTE's billing practices are regulated by the WUTC and therefore fall under the statutory exemption.

Under WAC 480-120-106, telecommunications companies are required to send bills at regular intervals and to "clearly list all charges." The same WAC permits customers to request further itemization of the charges on their bills. Further, RCW 80.04.220 and .230 indicate and complement the WUTC's regulation of GTE's billing practices. Under .220, when a complaint is made to the WUTC about the reasonableness of any rate or charge assessed, the WUTC has the authority to investigate the complaint and, if the complaint has merit, award reparation, or damages in the amount of the excess amount charged and collected,

---

[3]*Tanner Elec. Coop. v. Puget Sound Power & Light*, 128 Wn.2d 656, 911 P.2d 1301 (1996).

[4]*Tanner*, 128 Wn.2d at 681.

together with interest. Under .230 the WUTC has the authority to order that GTE refund the amount of the overcharge, with interest. RCW 80.04.240 then sets forth the exclusive procedure that a customer can pursue. The statute mandates that all complaints concerning overcharges resulting from the collection of *unreasonable rates and charges* or collection of amounts in excess of lawful rates shall be filed with the WUTC. If a company fails to comply with an order of the WUTC to repay any overcharge determined, then the customer may institute action in superior court to recover the amount of the overcharge, with interest.

Hopkins attempts to claim that its suit is *not* one to recover "overcharges" but one to seek damages and the curbing of GTE's deceptive and illicit billing practices. Hopkins' attempt to distinguish its claim as damages for deceptive billing as opposed to seeking recovery of "overcharges" is purely fiction. The complaint is premised on the claim that it was not leasing a telephone from GTE but GTE applied a lease charge appearing to be part of its "regulated" telephone service charge. Here, even though the complaint is couched in the terms of deceptive practices, what actually is presented is a claim for overcharges, or an unreasonable charge for something not received. Billing practices are regulated by the WUTC and the trial court did not err in dismissing the CPA claim.

Hopkins' other damage claims amount to little more than a demand for overpayments of unreasonable charges for the lease of a phone which did not exist. No matter how vehemently Hopkins argues that it is seeking damages for GTE's failure to disclose, and that it is not seeking to be compensated for overcharges, the prayer for relief belies this claim.

■ Under RCW 80.04.230, any GTE customer who believes he, she, or it was charged an amount in excess of the lawful rate for its telephone service is authorized to seek a refund of the overcharge from the WUTC. Under RCW 80.04.240, the WUTC has original jurisdiction over claims for refunds of overcharges.

Hopkins also makes an argument regarding what is, or what isn't, contained in its contract with GTE. It asserts that GTE cannot rely on its schedule of tariffs as the contract, as phone leasing has been "detariffed," thus the tariff is not the contract, as with regulated phone services. Hopkins claims that because there can be separate actions on contracts other than tariff claims, that this contract claim should be decided in state court as it is not subject to agency regulation. However, Hopkins has not produced a contract with GTE showing independent obligations and agreements that could be breached. There is nothing in the record before us that establishes anything other than the tariff as the "contract" with the customer regarding what is on the bill. In actuality, Hopkins' claim is based on the fact that it mistakenly paid a charge it was billed that should not have been charged at all, and it now seeks a refund of its money. That characterization puts the billing practices claim squarely within the jurisdiction of the WUTC.

When both the court and an administrative agency have jurisdiction over an issue, the doctrine of primary jurisdiction is applied to determine whether the court should retain the action or refer the issues to an administrative agency for the initial decision.[5] "The court will usually defer to agency jurisdiction if enforcement of a private claim involves a factual question requiring expertise that the courts do not have or involves an area where a uniform determination is desirable."[6] "No fixed formula exists for determining when the doctrine of primary jurisdiction should be applied."[7] "As to the trial court's application of the doctrine of primary jurisdiction, thus declining to

---

[5]*Vogt v. Seattle-First Nat'l Bank*, 117 Wn.2d 541, 554, 817 P.2d 1364 (1991); *see also Nader v. Allegheny Airlines, Inc.*, 426 U.S. 290, 96 S. Ct. 1978, 48 L. Ed. 2d 643 (1976); Gerald E. Berendt & Walter J. Kendall, *Administrative Law: Judicial Review — Reflections on the Proper Relationship Between Courts and Agencies*, 58 CHI.-KENT L. REV. 215, 236 (1982).

[6]*Vogt*, 117 Wn.2d at 554 (citing 58 CHI.-KENT L. REV. at 236).

[7]*Vogt*, 117 Wn.2d at 554 (citing *Oasis Petroleum Corp. v. United States Dep't of Energy*, 718 F.2d 1558 (Temp. Emer. Ct. App. 1983)).

exercise jurisdiction, the decision of the court is reviewed for an abuse of discretion.[8]

Hopkins asserts the trial court erred when it held that primary jurisdiction over the injunctive relief sought, the alleged unfair practices, the breach of contract and the negligent misrepresentation claims reside with the WUTC. In *In re Real Estate Brokerage Antitrust Litig.*, this state's Supreme Court stated three factors governing application of the doctrine of primary jurisdiction. Those factors are:

> 1. The administrative agency has the authority to resolve the issues that would be referred to it by the court. . . .
>
> 2. The agency must have special competence over all or some part of the controversy which renders the agency better able than the court to resolve the issues; and
>
> 3. The claim before the court must involve issues that fall within the scope of a pervasive regulatory scheme so that a danger exists that judicial action would conflict with the regulatory scheme.[9]

A review of the record does not support Hopkins' claim that the second and third parts of the test are not met. The WUTC has assessed whether various forms of disclosure meet the requirement that all charges be "clearly listed." GTE began using the UNREG LEASE/MAINT phrase on its billing during a period of full regulation. Hopkins' argument ignores that GTE and other phone companies engaged in a lengthy process with the WUTC in connection with "deregulation" with respect to the kinds of notice that went to customers at the time of deregulation. Hopkins must concede either that GTE violated a WUTC customer notice order, or that the WUTC approved a "misleading" or inadequate customer notice. Further, the WUTC regulates the content of telephone bills. Thus, we

---

[8]*State ex rel. Graham v. Northshore Sch. Dist. No. 417*, 99 Wn.2d at 242; *Kerr v. Department of Game*, 14 Wn. App. at 429; *see also In re Real Estate Brokerage Antitrust Litig.*, 95 Wn.2d at 305.

[9]*In re Real Estate Brokerage Antitrust Litig.*, 95 Wn.2d at 302-03 (citations omitted).

agree with the trial court that the WUTC is the proper place for these issues to be decided.

Technically, Hopkins' claim that the third part of the test is not met because this case does not present a conflict with the scope of a regulatory scheme has some merit. However, if, as Hopkins alleges, this is a widespread practice of GTE, and possibly other phone companies, then there is a danger that the court action might conflict with agency resolution, especially if the label used for the charge was originally approved by the WUTC. Courts often defer to agency jurisdiction when the allegations involve widespread acts, and retain jurisdiction only when the claimant's allegations involve an isolated action or transaction.[10]

Finally, Hopkins argues that the trial court erred in referring the claims to the WUTC because it is not authorized to resolve the damage claims. Although the WUTC cannot award "damages" per se, it is allowed to order refunds of overcharges. Hopkins' damage claims were in an amount equal to the telephone lease fees paid. The trial court did not abuse its discretion in referring this case to the WUTC under the doctrine of primary jurisdiction.

The decision of the trial court is affirmed.

AGID and BECKER, JJ., concur.

---

[10]*See, e.g., Moore v. Pacific NW Bell*, 34 Wn. App. 448, 453-54, 662 P.2d 398, *review denied*, 100 Wn.2d 1005 (1983).