[No. 20528.    Department One.    September 30, 1927.]

MUTUAL SALES AGENCY, INCORPORATED, *Respondent*, v. M. M. HORI, *Appellant*.[1]

[1] APPEAL (375)—REVIEW—MATTERS NOT BEFORE TRIAL COURT. Error in the matter of procedure in a garnishment, not objected to below, will not be considered on appeal.

[2] SALES (34)—CONSTRUCTION OF CONTRACT—PLACE OF DELIVERY. Delivery of a shipment of potatoes was made at the place to which they were shipped and not at the point of shipment, where they were shipped on telegraphic order, with bill of lading and sight draft attached for the purchase price, sent to a local bank, with instructions to deliver the bill on payment of the price, which was done.

[3] SAME (87-89)—OPERATION AND EFFECT—DELIVERY THROUGH CARRIER—PAYMENT OF PRICE. Where the seller of a shipment of potatoes refused to make delivery at the alleged contract price, but asked a higher price, and relieved the buyer of the obligation to take them, the buyer's payment of the price demanded is voluntary, and precludes any recovery for the excess, even if the seller was liable for damages for breach of contract; and coercion cannot be claimed because of the buyer's prior resale in which the seller was in no way concerned.

[4] SALES (9, 11)—REQUISITES—OFFER AND ACCEPTANCE—WITHDRAWAL THEREOF. Where, in a sale by correspondence of a car load of potatoes, upon which there had been two offers of different grades at different prices, it appears that the seller thought that the higher grade was ordered, and the buyer expected to receive the lower grade, the minds of the parties did not meet on the price.

[1]Reported in 259 Pac. 712.

[5] SALES (19)—ESTOPPEL OR WAIVER. Upon accepting a shipment of potatoes, shipped as higher grade than that ordered, and voluntarily paying the higher price demanded, the buyer is estopped to assert an overpayment or that they were in fact of the lower grade purchased at a lower price.

[6] GARNISHMENT (54)—ENFORCEMENT PROCEEDINGS.—COSTS. Upon a garnishee's answer that he has property or effects in his possession belonging to the defendant, it is error to grant the garnishee defendant a personal judgment against the principal defendant for attorney's fees and costs.

Appeal from a judgment of the superior court for Yakima county, Nichoson, J., entered November 6, 1926, upon findings in favor of the plaintiff, in an action on contract, tried to the court. Reversed.

*C. E. Udell,* for appellant.

*Joseph C. Cheney,* for respondent.

FULLERTON, J.—The respondent, the Mutual Sales Agency, and the appellant, Hori, are each brokers, and engage, as part of their respective businesses, in buying and selling potatoes. The respondent does business at Yakima, in this state, and the appellant at Whitefish, in the state of Montana. On March 31, 1926, the respondent sent the appellant a telegram, reading as follows:

"Quote us your best price certified and uncertified gems two to ten ounce."

To this, the appellant replied by a night message under the same date as follows:

"Your telegram. Uncertified gems two to eight ounce our best price three seventy for car. Answer quick. Seed hard to buy."

On the following day, April 1, 1926, the appellant sent to the respondent the further telegram:

"Netty gem immature seed, price two eighty f. o. b. car, size one to eight ounces field run, twenty ton car. Wire at once at my expense."

On the same day, the respondent sent to the appellant the following telegram:

"Wire confirmation. Ship immediately, ourselves here, via Great Northern, Union Pacific, the car seed offered your wire date. Ship car draft attached Blading. Wire car number contents."

To this the appellant replied on the same date:

"Wire received. Ship you Saturday twenty ton car as per instructions."

On the following day, April 2, 1926, the respondent sent to the appellant the additional telegram:

"Wire number contents, soon shipped, Saturday car. Also wire if can offer any more same stock. We interested couple more cars right prices. What have you to offer table stock gems."

The appellant replied on the same day:

"Can't tell about more seed stock yet. Buying all we can. Commercial grade table stock three sixty f. o. b. car."

On April 3, 1926, the appellant wired the respondent:

"Ship today WFG, four, nine, five, seven, three."

On shipping the potatoes, the appellant attached to the bill of lading a sight draft for the purchase price, and caused the draft and bill to be forwarded to a local bank at Yakima, with instructions to deliver the bill of lading to the respondent on payment of the draft. When the car reached Yakima, the respondent sent the following telegram to the appellant:

"Car seed here. Quality satisfactory. However, your draft in error. Please refer to your wire April first. You quoted us this car two eighty hundred which we accepted. You have made out your draft basis three seventy hundred. Have your bank wire bank here reduce draft to correct figure so we can pay immediately. Also wire whether you can confirm another similar car same price this one. Answer today sure."

To this the appellant replied:

"Your telegram. Our draft correct. Car shipped contains seed two to ten ounce. See our telegram March thirty one and yours of April 1 to wire confirmation. Seed at two eighty immature and no order filled for you. The car shipped contains seed at three seventy if you don't want the car, wire and we will move it."

The respondent made no answer to the last telegram. It, however, later on went to the bank and paid the draft, took up the bill of lading, and by means thereof took a delivery of the potatoes and afterwards disposed of them as its own.

In this action, the respondent sought to recover the difference between the price at which it conceived it had contracted to pay for the potatoes and the sum it paid to procure their delivery, which sum it alleged to be $389.88. At the time of the commencement of the action, it sued out a writ of garnishment, which writ it caused to be served on the bank immediately after it had paid the money therein necessary to procure a delivery of the potatoes. The appellant took issue upon the allegations of the complaint, and a trial was had before the court sitting without a jury. The trial resulted in a judgment in favor of the respondent for the sum demanded in the complaint, with interest at the legal rate from the time of the payment of the money into the bank. The court also included in the judgment entry a judgment in favor of the garnishee against the respondent for an attorney fee of twenty-five dollars, and its costs of suit taxed at four dollars. The appeal is from this judgment.

[1] In his arguments in this court, the appellant questions the procedure pursued by the respondent, but the record does not disclose that he questioned it in the court below. For this reason, it cannot be noticed here.

[2]  But, in our opinion, the judgment is erroneous, when considered on its merits.  There was not, as the respondent argues and as the trial court seems to have determined, a delivery of the potatoes to the respondent at Whitefish, Montana.  The bill of lading itself is not in the record.  Its form can be gathered only by the description given of it by the witnesses.  But enough appears to show that the appellant reserved the ownership of the potatoes, and the right to their possession, until the payment of the purchase price.  This is not a delivery at the place of shipment.  Nor do we read the contract as fixing the place of shipment as the place of delivery.  The reference to the place of shipment is made in a telegram quoting the price of the potatoes.  Nowhere is it stated that the place of delivery is the place of shipment, and the evidence, as a whole, shows it was not contemplated that the place of delivery should be other than at Yakima, and then only upon the payment of the purchase price.

[3]  Nor was the respondent coerced into paying the price charged.  Conceding that there was a contract entered into to sell them at the price for which the respondent contends, it was relieved from any obligation to take them when the appellant fixed a higher price and refused, on the respondent's demand, to deliver them on the payment of the contract price.  True, it says that it had resold the potatoes prior to their arrival and was obligated to make good its contract of sale.  But this is not such coercion as it can charge to the appellant.  Its contract of resale was voluntary on its part, and, to charge the appellant thereon for any loss arising from it, it must appear in some way that the appellant had a part therein.  It might follow that, if the respondent had a valid contract with the appellant for the purchase of the potatoes and the appellant breached the contract, it could maintain an action in damages against him for the

breach. But this is not the action it instituted, and its evidence would not justify a recovery on the theory that the action was one sounding in damages. It follows that the respondent acted voluntarily when it paid the draft; and the general rule is that one person cannot make himself the creditor of another by voluntarily paying a demand of that other, which he is under no obligation to pay. There are exceptions to the rule, it is true, such as where the payment is made by mistake, or because of some fraud or deceit practiced upon him by the other. But none of the exceptions is here present. The payment was made with full knowledge of all of the circumstances.

[4] There is, moreover, another reason why the judgment is erroneous. The respondent undoubtedly thought that the price at which it contracted to purchase the potatoes was the price quoted in the telegram of April 1, 1926, sent by the appellant to it, while the appellant expected to receive for them the price quoted in his telegram of March 31st. This is made clear by the subsequent telegrams passing between them, in which the respondent claimed an error in the price, and to which claim the appellant refused to accede. It is apparent, therefore, that the minds of the parties never met upon the contract price, and it was the duty of the respondent to refuse to receive the potatoes, unless it was willing to pay the price the appellant asked for them. Having paid the price at which the potatoes were quoted, and having taken possession of them and converted them to its own use, it is now estopped from asserting that there was an overpayment of the purchase price.

[5] The respondent argues that the potatoes shipped were of the grade described in the telegram of April 1, 1926, and not of the grade described in that of March 31. It did not introduce evidence to this effect,

but the evidence of the appellant was to the contrary, and we are by no means satisfied that it preponderates in favor of the respondent. But it was an immaterial circumstance, even conceding that the fact was established. It voluntarily paid the price for the better grade, and cannot now be heard to contend that the grade was something different.

[6]    The judgment is erroneous in another particular. As we have noted, the court granted to the garnishee defendant a personal judgment against the principal defendant for its attorney's fees and costs. But it is not the rule that a garnishee, answering that he has money or property in his possession belonging to the defendant in the action out of which the writ of garnishment is issued, may have such a judgment. Neither the rules of law nor the statute authorizes it. It may be that he can have such a judgment against the plaintiff suing out the writ, and it may be that the plaintiff can recover over against the principal defendant for the amount thereof. But the garnishee does not become such a principal in the action that he can have a separate personal judgment against the defendant therein.

The judgment is reversed, and the cause remanded with instructions to enter a judgment in favor of the defendant to the effect that the plaintiff take nothing by its action.

MACKINTOSH, C. J., MAIN, MITCHELL, and FRENCH, JJ., concur.