[No. 34322. Department One. February 20, 1958.]

V. H. SHIELDS, *Respondent*, v. WALTER E. SCHORNO *et al.*,
*Appellants.*[1]

*R. F. Dotsch*, for appellants.

*Neil Hoff*, for respondent.

MALLERY, J.—Plaintiff sued on a promissory note. The defendants' answer admitted execution and delivery of the note to the plaintiff as payee, but interposed affirmative defenses of fraud, and that the note was given without consideration.

At the close of the testimony, the court granted plaintiff's motion for a directed verdict upon the ground that, as a matter of law, the defendants had not made a *prima facie* showing on the affirmative defenses.

The defendants appeal.

The appellants operated a large dairy farm and had bor-

[1]Reported in 321 P. (2d) 905.

rowed extensively from the Puget Sound National Bank of Tacoma. The following testimony of the appellant Walter E. Schorno shows how his line of credit was handled at the bank:

"Q. But you had a practice with the bank where you would go into the bank and sign a note and tell them to try to get the money for you, didn't you? A. Yeah. Q. And if they could get the money, to deposit it to your account so you could keep operating? A. Yes. Q. Did you at any time ask the bank— . . . And you didn't at any time object to that procedure you had with the bank, did you? A. No, because—now, once in a while we call up the bank and ask them to deposit a $1,000., and they make the note out and we sign it. Q. And oftentimes you would go down and sign a note, wouldn't you, and leave it there and ask the bank to get the money in your account? A. Yeah. Q. Did you ever tell the bank, if they didn't want to finance it themselves they couldn't get it financed elsewhere? A. How you mean? Q. Did you ever tell the bank you wanted them to be the ones that advanced the money, and they had no right to go out and get somebody else's to cover the note? A. As long as the bank stand behind it I don't care where they get the money, but when you borrow money from the bank you get it from the bank. You don't care where the bank gets it from. I don't care. When I got the money with the real estate mortgage or chattel mortgage from the bank, I certainly not going to ask them where they got the money. Q. Then you wouldn't object if the bank asked Mr. Shields to deposit $10,000. and take your note, would you? . . . A. Well, that is entirely a different thing. If I borrow from the bank I don't borrow it from Mr. Shields, then the bank is responsible to pay Mr. Shields back. If it is, I owe it to the bank, not to Mr. Shields. If I borrow the money from the bank and the bank borrowed in turn from Mr. Shields, well, I haven't got nothing to do with this."

. As an example of the practice to which appellant testified, a note executed by appellant Walter E. Schorno and payable to the bank in the amount of seventy-five hundred dollars was sold to the respondent. The bank manager, O. C. Siburg, crossed a line through the payee bank's name and wrote respondent's name above it. The appellants paid the note without objection. That note is not here in question.

In April, 1952, the respondent brought to appellants' home a note executed by appellant Walter E. Schorno. The note was dated November 30, 1946, and was in the amount of ten thousand dollars payable to the order of the Puget Sound National Bank of Tacoma. The bank manager had sold the note to the respondent, and had drawn horizontal lines through the name of the payee bank and inserted the name of respondent above it, just as in the case of the note for seventy-five hundred dollars. The respondent demanded payment with interest or the execution of a new note in the amount of the principal plus accrued interest.

The appellants took the position that they did not know whether or not they had received the ten thousand dollars and that they executed the new note and delivered it because the respondent threatened to sue them if they did not do so. They feared a suit would jeopardize their credit rating with the Bank of California, Tacoma Branch, to which they had transferred their account. They contend the threat to sue was a fraud practiced upon them.

The court found that the threat to sue on the original note did not constitute a *prima facie* case of fraud or misrepresentation, and we agree that it does not.

About two years later, the appellants paid the respondent seven hundred and eighty dollars as interest on the new note. This voluntary payment of the interest waived the fraud claimed, in any event.

In *Anderson v. Tway,* 143 F. (2d) 95, the court said:

"It is the law that one who renews or makes payment on a note after knowledge of defenses that may be interposed to its collection, waives them, . . . and this extends to payments of interest."

The trial court was correct in holding that appellants failed to make a *prima facie* affirmative defense of fraud.

The appellants contend that there was no consideration for the new note. The rule is otherwise. Forbearance to sue upon a disputed claim, such as the original note, is consideration for a new promissory note. See *Johnson v. S. L. Savidge, Inc.,* 43 Wn. (2d) 273, 260 P. (2d) 1088, wherein we said:

"It is not essential, to constitute such a consideration, that the claim be indisputable or legally certain; where the validity of the claim is doubtful, the existence of a possibility of recovery is sufficient."

The trial court was correct in holding that appellants did not make a *prima facie* affirmative defense of lack of consideration for the note in question.

Appellants contend the court should have held that the bank manager was the agent of the respondent and not the agent of the appellants. This question is not germane to the issues in the case or the appellants' affirmative defenses of fraud and want of consideration.

The judgment is affirmed.

HILL, C. J., FINLEY, OTT, and HUNTER, JJ., concur.