170 P.3d 10 (2007)
INDOOR BILLBOARD/WASHINGTON, INC., a Washington corporation, individually, and on behalf of a class of persons and/or entities similarly situated, Appellant,
v.
INTEGRA TELECOM OF WASHINGTON, INC., a Washington corporation, Respondent.
No. 79977-6.
Supreme Court of Washington, En Banc.
Argued May 29, 2007.
Decided October 18, 2007.
*12 John David Stahl, Mundt MacGregor LLP, Seattle, WA, for Appellant/Cross-Respondent.
Sarah J. Crooks, Attorney at Law, Lawrence Reichman, Portland, OR, for Respondent/Cross-Appellant.
Bryan Patrick Harnetiaux, Attorney at Law, Spokane, WA, for Amicus Curiae on behalf of Washington State Trial Lawyers Association Foundation.
Shannon E. Smith, Office of the Attorney General, Seattle, WA, for Amicus Curiae on behalf of Attorney General of Washington.
FAIRHURST, J.
¶ 1 Indoor Billboard/Washington, Inc. (Indoor Billboard) appeals a trial court order granting summary judgment to Integra Telecom of Washington, Inc.[1] (Integra). Indoor Billboard asserted a claim for relief in King County Superior Court under Washington's Consumer Protection Act (CPA), chapter 19.86 RCW, alleging that Integra engaged in an unfair or deceptive act or practice by assessing its Washington local exchange customers a surcharge known as a presubscribed interexchange carrier charge or PICC. Indoor Billboard further claims it established causation under the CPA merely by a showing that it paid the PICC.
¶ 2 Integra argues the trial court properly granted summary judgment in its favor. It denies that it engaged in an unfair and deceptive act or practice by assessing a PICC surcharge to its local exchange customers and argues Indoor Billboard must establish that it relied on Integra's actions to show causation. It further asserts that the voluntary payment doctrine bars Indoor Billboard's claim for damages because Indoor Billboard knowingly paid the charges. In a cross petition, Integra argues that even if the trial court erred in granting summary judgment in its favor on the CPA issues, the trial court should have dismissed the case on the grounds that the Washington Utilities and Transportation Commission (WUTC) had exclusive jurisdiction over Indoor Billboard's claim.
¶ 3 We reverse the trial court's grant of summary judgment in favor of Integra and *13 affirm the trial court's denial of Integra's motion to dismiss for lack of subject matter jurisdiction. We hold that Indoor Billboard established as a matter of law that Integra engaged in an unfair or deceptive act or practice. We hold that genuine issues of material fact exist regarding a causal link between Integra's unfair or deceptive acts or practices and Indoor Billboard's injuries. We also conclude the voluntary payment doctrine does not apply as a matter of law. We remand the matter for trial.

I. FACTUAL HISTORY
¶ 4 Under Federal Communications Commission (FCC) regulations, certain local exchange carriers (LECs), known as incumbent local exchange carriers (ILECs),[2] may impose a PICC on interexchange (long distance) carriers. FCC PICC rule, 47 C.F.R. § 69.153(a); Clerk's Papers (CP) at 378. The purpose of the PICC is to allow ILECs to recover some of their costs of providing the "local loop."[3] CP at 378. The FCC permits interexchange carriers to pass-through to their end-users the PICC that they pay to the ILECs. Id. The FCC also sets the maximum monthly PICC an ILEC may charge but does not dictate the amount an ILEC charges as long as it is under the maximum. CP at 379.
¶ 5 Integra is not an ILEC. Integra is a competitive telecommunications company (CTC)[4] under former RCW 80.36.320 (2003)[5] and, therefore, not subject to the provisions of 47 C.F.R. § 69.153. Nevertheless, in the fall of 2001, after conducting a survey to determine what rates other local competitors charged to their local service customers, Integra began to impose a surcharge of $4.21 entitled a PICC to all of its customers, regardless of whether they had presubscribed to an interexchange carrier. Integra properly included the PICC surcharge on its price list, as required by WAC 480-80-204.[6]
¶ 6 In March 2005, an Integra sales representative, Erin McCune, met with the vice president of Indoor Billboard, James Shulevitz, to discuss Integra's telephone services. McCune sent Shulevitz a copy of Integra's price list, which included the PICC surcharge. Shortly after their meeting, Shulevitz sent McCune an e-mail informing her that there would be "no need to charge [him] PICC charges" because he was not interested in Integra's interexchange services. CP at 163. McCune responded that the PICC could not be waived "regardless of whether [Indoor Billboard] use[d] Integra as [its interexchange] carrier." CP at 164.
¶ 7 A few days later, Shulevitz contacted Frank Westby, a representative of Indoor Billboard's interexchange carrier, Eschelon. Shulevitz informed Westby that Integra had offered to provide Indoor Billboard with local service in Washington and asked Westby whether the PICC charge was federally mandated. *14 Westby replied that it was "not regulated by the government" and that the price was "determined by the Long distance carrier/Phone company." CP at 171.
¶ 8 Shulevitz wrote back to McCune to tell her about his discussions with Westby and asked her why Eschelon's PICC was 44 percent lower than Integra's. McCune responded,
[d]ifferent CLECs have different PICC . . . charges . . . and these can vary by market. Our PICC . . . [is] different in the Oregon market than in Washington, due to different market conditions. I am unable to change them, so I would recommend looking at the whole picture (line rate plus all surcharges) to make an accurate comparison.
CP at 174 (emphasis added).
¶ 9 The next month, Shulevitz signed an agreement with Integra for five line local exchange and digital subscriber line services. Integra sent Indoor Billboard its first invoice in June 2005, which included a PICC surcharge listed under "Taxes and Surcharges." CP at 55-56. Before paying the invoice, Shulevitz conducted some independent research into Integra's PICC surcharge. First, he sent an e-mail to a friend who worked in the telecommunications industry, Mark Berkovitch. Berkovitch suggested that Integra's PICC was a "double dip" and gave Shulevitz a link to the FCC website. CP at 178-79. Shulevitz checked the FCC website and called the FCC. The FCC informed Shulevitz that it did not regulate Integra and could not help him. The FCC suggested that Shulevitz contact the WUTC. Shulevitz called the WUTC and the representative he spoke with told him it was "news to [her]" that Integra came under the WUTC's purview. CP at 137. She told him that if he was billed for the surcharge again he should call her back. Finally, Shulevitz spoke with a representative at Integra's customer service department. Shulevitz said the representative left him with the impression that Integra's PICC was "associated with," "approved by," "sanctioned by," and "okay with" the FCC and Integra had "every right to charge it." CP at 146. Shulevitz further claimed that, despite Integra's reassurances, he continued to be concerned about the PICC surcharge but he did not make a written complaint.
¶ 10 Despite his ongoing concerns, Shulevitz authorized payment of the June invoice because he "[didn't] like to start things off on a sour note." CP at 148. He also authorized payment of the July invoice, which included another PICC charge, but he did not call the WUTC back as the representative had advised.
¶ 11 However, the August invoice did not include a PICC charge. It contained a message that stated, "[d]ue to recent FCC rulings, changes to government prescribed fees are reflected in this invoice. The . . . PICC will no longer be assessed. Instead, the Interconnection Fee (ICF) will now recover network costs prescribed and regulated by the FCC and state public utility commissions." CP at 63. Customers were directed to Integra's website for more information.

II. PROCEDURAL HISTORY
¶ 12 In its complaint, Indoor Billboard first alleged that Integra had published a price list indicating it would assess a PICC of $4.21 per line per month to all customers regardless of whether they had presubscribed to an interexchange carrier. CP at 45, ¶ 11. It alleged that in the telecommunications industry, a PICC is a charge assessed only by ILECs on multiline business customer's interexchange carriers to recover costs of providing the ILECs' local loop. CP at 45, ¶ 13. It alleged that an ILEC may assess a PICC only against a multiline business customer's interexchange carrier, which may pass the PICC on to its customer, or the ILEC may assess its multiline business customer directly, but only if the customer has not presubscribed to an interexchange carrier. CP at 46, ¶ 13. It alleged that because Integra is not an ILEC and does not own and operate its own local loop, the PICC Integra assessed and collected was not a PICC as the term is defined in the telecommunications industry. CP at 46, ¶ 14. Indoor Billboard further alleged that Integra's price list "wrongfully institute[d] a purported PICC surcharge" and "wrongfully assessed *15 upon and collected from its customers a surcharge misrepresented to be a PICC." CP at 46, ¶ 15.
¶ 13 Indoor Billboard claimed (1) Integra was engaged in a trade or commerce as defined in RCW 19.86.110, (2) Integra's practice of assessing and collecting its PICC was an unfair and deceptive act or practice under RCW 19.86.020, (3) Integra's unfair or deceptive act or practice impacted the public interest, (4) Indoor Billboard and the members of the class had suffered injury in their business or property, and (5) Integra's unfair or deceptive act or practice was the proximate cause of the injuries to Indoor Billboard and the members of the class. CP at 51, ¶¶ 34, 38. Finally, Indoor Billboard claimed it was entitled to actual damages, treble damages, injunctive relief, and attorney fees and costs under RCW 19.86.090. CP at 51, ¶ 40.
¶ 14 Integra filed a motion to dismiss under CR 12(b)(1), arguing that the trial court did not have subject matter jurisdiction to hear Indoor Billboard's claims because the WUTC had either exclusive or primary jurisdiction under RCW 80.04.220-.240. The trial court denied Integra's motion without hearing oral argument and without explanation.
¶ 15 Integra filed a motion for summary judgment, arguing that Indoor Billboard did not establish the unfair or deceptive act or practice element and causation element of its CPA claim. It also asserted the affirmative defense that Indoor Billboard's CPA claim was barred by the voluntary payment doctrine. The trial court granted summary judgment to Integra. The trial court denied Indoor Billboard's motion for reconsideration.
¶ 16 Indoor Billboard appealed the trial court order granting summary judgment to Integra to Division One of the Court of Appeals. Integra cross-appealed the trial court's denial of its motion to dismiss for lack of subject matter jurisdiction. To promote the orderly administration of justice, Indoor Billboard's appeal was transferred to this court under RAP 4.4.

III. ISSUES
A. Did the trial court have subject matter jurisdiction to decide Indoor Billboard's CPA claim?[7]
B. Did the trial court err in granting summary judgment in Integra's favor on Indoor Billboard's CPA claim?

IV. ANALYSIS
¶ 17 We review a trial court's grant of summary judgment de novo. Vallandigham v. Clover Park Sch. Dist. No. 400, 154 Wash.2d 16, 26, 109 P.3d 805 (2005) (citing Atherton Condo. Apartment-Owners Ass'n Bd. of Dirs. v. Blume Dev. Co., 115 Wash.2d 506, 515-16, 799 P.2d 250 (1990)). We will affirm a grant of summary judgment if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." CR 56(c). We consider all facts in the light most favorable to the nonmoving party and affirm a grant of summary judgment only if we determine, based on all of the evidence, reasonable persons could reach but one conclusion. Vallandigham, 154 Wash.2d at 26, 109 P.3d 805. The moving party has the burden of showing that there is no genuine issue as to any material fact. Id.
¶ 18 "A party may move for summary judgment by setting out its own version of the facts or by alleging that the nonmoving party failed to present sufficient evidence to support its case." Pac. Nw. Shooting Park Ass'n v. City of Sequim, 158 Wash.2d 342, 350, 144 P.3d 276 (2006) (citing Guile v. Ballard Cmty. Hosp., 70 Wash.App. 18, 21, 851 P.2d 689 (1993)). "If the moving party uses the latter method, it must `identify those portions of the record, together with the affidavits, if any, which . . . demonstrate the absence of a genuine issue of material fact.'" Id. at 350-51, 144 P.3d 276 (alteration in original) (quoting Guile, 70 Wash.App. at 22, 851 P.2d 689). "Once the moving party has *16 met its burden, the burden shifts to the nonmoving party to present admissible evidence demonstrating the existence of a genuine issue of material fact." Id. at 351, 144 P.3d 276 (citing Vallandigham, 154 Wash.2d at 26, 109 P.3d 805). "If the nonmoving party cannot meet that burden, summary judgment is appropriate." Id.
A. Did the trial court have subject matter jurisdiction to decide Indoor Billboard's CPA claim?
¶ 19 As a threshold issue, we first determine whether the superior court had subject matter jurisdiction to decide Indoor Billboard's claim. A challenge to a trial court's subject matter jurisdiction to hear a claim is reviewed de novo. Wright v. Colville Tribal Enter. Corp., 159 Wash.2d 108, 118-19, ¶ 23, 147 P.3d 1275 (2006), cert. dismissed, ___ U.S. ___, 127 S.Ct. 2161, 167 L.Ed.2d 887 (2007).
¶ 20 Integra contends the trial court lacked subject matter jurisdiction to decide Indoor Billboard's claims because RCW 80.04.240 vests the WUTC with exclusive original jurisdiction to decide claims that a public service company charged an unreasonable or unlawful rate and Indoor Billboard's claim was that Integra wrongfully or unlawfully collected its PICC.
¶ 21 Indoor Billboard argues that because RCW 19.86.170 eliminated immunity from CPA claims for CTCs, Integra cannot assert that the WUTC has exclusive jurisdiction over Integra's actions. Indoor Billboard also argues the trial court had subject matter jurisdiction to decide its claim because the WUTC lacks the authority to adjudicate a CPA claim and the ability to grant the relief afforded under the CPA.
¶ 22 When interpreting a statute, our primary goal is to determine and give effect to the legislature's intent and purpose in creating the statute. Am. Cont'l Ins. Co. v. Steen, 151 Wash.2d 512, 518, 91 P.3d 864 (2004); State v. Jacobs, 154 Wash.2d 596, 600, 115 P.3d 281 (2005). We generally begin our analysis with the text of the statute. Steen, 151 Wash.2d at 518, 91 P.3d 864. If the statute is clear and unambiguous on its face, we determine its meaning only from the language of the statute and do not resort to statutory construction principles. Id. A statute is ambiguous only if it can be reasonably interpreted in more than one way, not merely because other possible interpretations exist. Id.
¶ 23 The WUTC regulates "the rates, services, facilities, and practices of . . . telecommunications companies." Former RCW 80.01.040(3) (1985). The WUTC is vested with exclusive jurisdiction to decide complaints concerning the "reasonableness of any rate, toll, rental, or charge[] . . . for any service performed by any public service company" or "charge in excess of the lawful rate in force at the time such charge was made." RCW 80.04.220-.240. Actions or transactions regulated by the WUTC are exempt from CPA claims. RCW 19.86.170.
¶ 24 In 1985, the legislature enacted legislation that specifically exempted actions or transactions of CTCs from the immunity granted under RCW 19.86.170. Laws of 1985, ch. 450, § 8; RCW 80.36.360.[8] This legislation results in CTCs being subject to CPA claims. Id.
¶ 25 The superior court has jurisdiction over CPA claims under former RCW 19.86.090 (1987), which provides, in pertinent part:
Any person who is injured in his or her business or property by a violation of RCW 19.86.020 [unfair competition, practices] may bring a civil action in the superior court to enjoin further violations, to recover the actual damages sustained by him or her, or both, together with the costs of the suit, including a reasonable attorney's fee, and the court may in its discretion, increase the award of damages to an amount not to exceed three times the actual damages sustained.
¶ 26 Integra acknowledges it is a CTC under RCW 80.36.310-.330. As a CTC, it is exempt from the immunity granted to regulated *17 telecommunications companies under RCW 19.86.170. Nevertheless, it argues that Indoor Billboard's claim is subject to the exclusive jurisdiction of the WUTC because the claim was for reimbursement of unreasonable rates and charges rather than damages under the CPA. Integra relies on D.J. Hopkins, Inc. v. GTE Northwest, Inc., 89 Wash.App. 1, 947 P.2d 1220 (1997) for this proposition, but its reliance on Hopkins is misplaced for two reasons.
¶ 27 First, Hopkins involved a claim against a regulated noncompetitive telecommunications company, which was immune from CPA claims. Id. at 3, 947 P.2d 1220. Because Integra is a CTC, it cannot claim the immunity granted to regulated noncompetitive telecommunications companies under RCW 19.86.170.
¶ 28 Second, Hopkins alleged that GTE was engaged in deceptive billing practices when it continued to bill Hopkins for the lease of a desk telephone for nine years after Hopkins chose to use its own telephone rather than one leased from GTE. 89 Wash.App. at 3, 947 P.2d 1220. The court concluded that Hopkins' claim was not properly brought under the CPA because it was for services not received rather than deceptive billing practices. Id. at 6, 947 P.2d 1220. Indoor Billboard, in contrast, clearly alleged a valid claim under chapter 19.86 RCW that Integra engaged in the unfair and deceptive act or practice of charging and collecting a surcharge unfairly or deceptively described as a PICC.
¶ 29 We conclude that because Integra is a CTC, and cannot claim immunity from CPA claims under RCW 19.86.170, and Indoor Billboard clearly alleged a valid claim under chapter 19.86 RCW, the trial court had subject matter jurisdiction to decide Indoor Billboard's claim.
B. Did the trial court err in granting summary judgment in Integra's favor on Indoor Billboard's CPA claim?
¶ 30 The CPA was enacted in 1961, in part, to protect the public from "unfair or deceptive acts or practices in the conduct of any trade or commerce." RCW 19.86.020. The purpose was to "protect the public and foster fair and honest competition." RCW 19.86.920. The CPA is to be "liberally construed that its beneficial purposes may be served." Id.
¶ 31 At the time the CPA was enacted, only the Washington State attorney general (AG) was authorized to bring suit to enforce it. Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co., 105 Wash.2d 778, 784, 719 P.2d 531 (1986). In 1971, the legislature instituted a private right of action to enlist the aid of private individuals in enforcing the CPA. Lightfoot v. MacDonald, 86 Wash.2d 331, 335-36, 544 P.2d 88 (1976). However, this court has construed the CPA to require that a private plaintiff show not only that a defendant's practices affect the private plaintiff but that they also have the potential to affect the public interest. Hangman Ridge, 105 Wash.2d at 788, 719 P.2d 531; Lightfoot, 86 Wash.2d at 335-36, 544 P.2d 88. Amici curiae the Washington State Trial Lawyers Association Foundation (WSTLA) and the AG urge this court, in deciding this case, to consider the legislature's purpose of protecting the public and the legislature's desire that the CPA be liberally construed.
¶ 32 To prevail on a private CPA claim, a private plaintiff must show (1) an unfair or deceptive act or practice, (2) that occurs in trade or commerce, (3) a public interest, (4) injury to the plaintiff in his or her business or property, and (5) a causal link between the unfair or deceptive act and the injury suffered. Hangman Ridge, 105 Wash.2d at 784-85, 719 P.2d 531. A plaintiff must satisfy all five elements to prevail. Id. at 793, 719 P.2d 531.
¶ 33 Indoor Billboard appeals the trial court's grant of summary judgment in favor of Integra on only the first and fifth elements, unfair or deceptive act or practice and causation.
1. Unfair or deceptive act or practice
¶ 34 When the issue is whether a party committed a particular act, the court reviews any contested facts under the substantial evidence test. Leingang v. Pierce County Med. Bureau, Inc., 131 Wash.2d 133, *18 150, 930 P.2d 288 (1997). "[T]he determination of whether a particular statute applies to a factual situation is a conclusion of law." Id. Where there is no dispute about what the parties did, "whether the conduct constitutes an unfair or deceptive act can be decided by this court as a question of law." Id. The parties here agree that whether Integra's actions constituted an unfair or deceptive act or practice is a question of law. Br. of Appellant at 27-28; Br. of Resp't/Cross Appellant at 18.
¶ 35 An unfair or deceptive act or practice need not be intended to deceive  it need only have "the capacity to deceive a substantial portion of the public." Hangman Ridge, 105 Wash.2d at 785, 719 P.2d 531. "The purpose of the capacity-to-deceive test is to deter deceptive conduct before injury occurs." Id. (citing Jeffrey M. Koontz, Washington Lawyers Under the Purview of the State Consumer Protection ActThe "`Entrepreneurial Aspects'" Solution  Short v. Demopolis, 103 Wash.2d 52, 691 P.2d 163 (1984)., 60 Wash. L.Rev. 925, 944 (1985)). "[K]nowing failure to reveal something of material importance is `deceptive' within the CPA." Robinson v. Avis Rent A Car Sys., Inc., 106 Wash.App. 104, 116, 22 P.3d 818 (2001).
¶ 36 Indoor Billboard claims that Integra's practice had the capacity to deceive a substantial portion of the public, and actually did deceive Indoor Billboard, about the nature of Integra's PICC. Indoor Billboard also argues that the nature of Integra's PICC was of material importance to customers. Integra responds that the use of the term PICC does not suggest it is regulated by the FCC, nor does listing it under "Taxes and Surcharges" suggest it is a "governmentally imposed tax." Br. of Resp't/Cross Appellant at 24. Integra also rejects Indoor Billboard's claim that the nature of its PICC was of material importance, stating, "[t]here is no such thing as a `true PICC.'" Id. at 22.
¶ 37 Indoor Billboard relies on two cases from Division One of the Court of Appeals for its arguments: Dwyer v. J.I. Kislak Mortgage Corp., 103 Wash.App. 542, 13 P.3d 240 (2000); Pickett v. Holland America Line-Westours, Inc., 101 Wash.App. 901, 6 P.3d 63 (2000) (Pickett I), rev'd, 145 Wash.2d 178, 35 P.3d 351 (2001) (Pickett II).
¶ 38 In Dwyer, the court ruled that a mortgage company's practice of including a fax charge on its mortgage payoff statements, without further explanation, deceived customers into thinking they had to pay the fee before their mortgages would be released. 103 Wash.App. at 547, 13 P.3d 240. Indoor Billboard argues Integra's actions were comparable to those of the mortgage company because Integra listed its PICC on its invoices in a deceptive manner. Indeed, Indoor Billboard argues, if Integra had properly disclosed the "true nature" of its PICC, there would be no deception. Br. of Appellant at 39. Integra tries to distinguish its actions from those of the mortgage company in Dwyer, arguing it fully disclosed that its PICC was not regulated by the FCC in discussions with Shulevitz, whereas the mortgage company failed to disclose the fact that the facsimile fee was not part of the mortgage payoff. We agree with Indoor Billboard that Integra's act of listing its PICC under the heading of "Taxes and Surcharges" on its invoices was analogous to the actions of the mortgage company in Dwyer. The surcharge was called a PICC and listed on a portion of the invoice that included state and federal tax charges and had "the capacity to deceive a substantial portion of the public" into believing it was regulated by the FCC. Hangman Ridge, 105 Wash.2d at 785, 719 P.2d 531.
¶ 39 Pickett I involved a class action suit against a cruise ship line for a variety of claims, including a CPA violation. 101 Wash. App. at 906, 6 P.3d 63. The plaintiffs had alleged that the cruise ship line misrepresented certain charges as mandatory taxes and fees when the charges were actually retained by the cruise line for corporate purposes. Id. A class was certified for settlement purposes and a member of the class intervened, challenging the fairness of the settlement. Id. at 905, 6 P.3d 63. Although the only issue presented to the Court of Appeals was the fairness of the settlement, the court reached issues related to the merits of the CPA claim, noting the cruise ship line could not represent the charges as something they *19 were not. Id. at 920, 6 P.3d 63. Indoor Billboard argues Pickett Iis analogous because Integra called its surcharge by the same name as a charge regulated by the FCC when it actually was something else. But this court subsequently reversed Picket I, casting doubt on its precedential value for this case. See Pickett II, 145 Wash.2d at 191, 35 P.3d 351.
¶ 40 Integra relies on a different case from Division One, Robinson, 106 Wash.App. at 109, 22 P.3d 818. Robinson involved allegations by rental car lessees who claimed that rental car companies violated the CPA by unbundling and separately charging airport concession fees that were previously quoted to customers as part of the total rental rate. Id. The court held that the lessees did not make the required showing that the car rental companies failed to disclose the separate fees. Id. at 117, 22 P.3d 818. Integra contends that Robinson stands for the proposition that the only relevant time period for determining whether it acted unfairly or deceptively was when it signed the agreement with Shulevitz, not when it invoiced Indoor Billboard for its services. Integra argues that because Indoor Billboard did not see the invoice until after it signed the agreement, Integra could not have deceived Indoor Billboard into paying the PICC. However, Indoor Billboard raised claims that Integra made an affirmative misrepresentation about its PICC before Shulevitz signed the agreement as well as on the invoices. It alleged that the information McCune provided to Shulevitz misled him into signing the service agreement. Therefore, Robinson does not support Integra's arguments.
¶ 41 Integra's PICC need only have had the capacity to deceive. FCC regulated PICCs can be charged only by ILECs, but Integra charged a surcharge that it called a PICC even though it is not an ILEC. The purpose of the FCC regulated PICC is to allow ILECs to recover from their customers the costs of providing interexchange carriers access to the local loop, but Integra's PICC was not associated with the costs of providing interexchange carriers access to the local loop. Integra acknowledged that it used the term PICC even though it knew the term had a specific meaning under the FCC because the marketplace was already familiar with the term and use of the term provided Integra with a competitive advantage. Integra listed its PICC under "Taxes and Surcharges" on its invoices. Integra's website described its PICC using language almost identical to the language the FCC used in describing its PICC. Even though Indoor Billboard acknowledged that it did not see Integra's website prior to purchasing Integra's services, Indoor Billboard and many other customers called Integra to inquire about the PICC and express concern or confusion.
¶ 42 We conclude that Integra engaged in an unfair or deceptive act or practice as a matter of law when it labeled the surcharge it imposed on local business service customers a PICC. The use of the term PICC had the capacity to deceive a substantial portion of the public into thinking the surcharge was FCC regulated and required. Whether the surcharge was FCC regulated and required could be of material importance to a customer's decision to purchase the company's services. The trial court erred in granting summary judgment to Integra on the first element of Indoor Billboard's CPA claim.
2. Causation
¶ 43 With regard to the causation element of its CPA claim, Indoor Billboard argues it need only show that it paid Integra's invoices to establish a causal link between Integra's unfair or deceptive act or practice and its injury. It further argues that, even if reliance is required, the evidence here is sufficient to preclude granting summary judgment to Integra. Integra responds that a plaintiff must establish that the plaintiff relied on the defendant's unfair or deceptive act or practice to establish a causal link with the plaintiff's injury and that Indoor Billboard did not do so. Amici curiae urge this court to liberally construe the CPA and hold that the plaintiff need only establish a causal link between the unfair or deceptive act or practice and the injury.
a. What is required to establish causation?
¶ 44 This court has yet to clearly define the proof required to establish causation in a *20 CPA claim. Pickett II, 145 Wash.2d at 196-97, 35 P.3d 351.
¶ 45 After the legislature authorized a private right of action under chapter 19.86 RCW, this court initially required a plaintiff to establish only three elements. "[T]he conduct complained of must: (1) be unfair or deceptive; (2) be within the sphere of trade or commerce; and (3) impact the public interest." Anhold v. Daniels, 94 Wash.2d 40, 45, 614 P.2d 184 (1980). A plaintiff could establish the public interest element per se by showing that the defendant violated a statute containing a specific legislative declaration of public interest impact. Id. at 43, 614 P.2d 184. Alternatively, a plaintiff could show that:
(1) [T]he defendant by unfair or deceptive acts or practices in the conduct of trade or commerce has induced the plaintiff to act or refrain from acting; (2) the plaintiff suffers damage brought about by such action or failure to act; and (3) the defendant's deceptive acts or practices have the potential for repetition.
Id. at 46, 614 P.2d 184 (emphasis added).
¶ 46 In a subsequent case involving a private dispute, Division Two of the Court of Appeals held that the Anhold public interest test required the plaintiff to establish a causal link between the defendant's unfair or deceptive act or practice and the plaintiff's injury. Nuttall v. Dowell, 31 Wash.App. 98, 111, 639 P.2d 832 (1982). Nuttall described the Anhold test as "an inducement offered by the defendant, which has the effect of either producing action or inaction on the part of plaintiff resulting in injury and damage." Id. In Nuttall, a purchaser of real estate brought a private CPA action against a real estate broker for misrepresenting the property boundary. Id. at 103-04, 639 P.2d 832. The court concluded that the purchaser did not rely on the broker's word that the boundary was correct because the purchaser conducted his own independent investigation of the boundary. Id. at 111, 639 P.2d 832. It held that a plaintiff does not establish a causal relationship between the plaintiff's injury and a misrepresentation of fact where the plaintiff does not convince the trier of fact that he or she relied upon that misrepresentation. Id.
¶ 47 Hangman Ridge sought to clarify the Anhold public interest element of a CPA claim. 105 Wash.2d at 789-90, 719 P.2d 581. It noted, "[w]here the transaction [is] essentially a private dispute, it may be more difficult to show that the public has an interest in the subject matter." Id. at 790, 719 P.2d 531 (citations omitted). It concluded Anhold's "`inducement-damage-repetition'" test "is not the best vehicle for showing that the public was or will be affected by the act in question." Id. at 789, 719 P.2d 531. It stated, "it is the likelihood that additional plaintiffs have been or will be injured in exactly the same fashion that changes a factual pattern from a private dispute to one that affects the public interest." Id. at 790, 719 P.2d 531 (citing McRae v. Bolstad, 101 Wash.2d 161, 166, 676 P.2d 496 (1984)). Instead of the three pronged public interest test set out in Anhold, Hangman Ridge established a five factor test for private CPA claims. Id.
¶ 48 In clarifying the public interest element, Hangman Ridge announced two new elements of a CPA claim. Id. at 792-93, 719 P.2d 531. The fourth element required "a showing that plaintiff was injured in his or her `business or property'." Id. at 792, 719 P.2d 531 (quoting former RCW 19.86.090 (1987)). The fifth element required the plaintiff to show causation. Id. at 792-93, 719 P.2d 531. With regard to causation, the court noted:
A causal link is required between the unfair or deceptive acts and the injury suffered by plaintiff. This causation element, like the injury element, has been foreshadowed by our previous opinions. The Anhold "inducement" prong hints at a causation requirement. Moreover, the need to find a causal link between the alleged acts and the plaintiff's injury has been the focus of a number of prior decisions of both this court and the Court of Appeals.
Id. at 793, 719 P.2d 531 (emphasis added). In announcing the new causation element, Hangman Ridge did not expressly disavow the inducement or reliance requirements applied in Anhold and Nuttall. However, *21 Hangman Ridge did not apply the new causation element because it held that there had been no unfair or deceptive act or practice. Id. at 794-95, 719 P.2d 531. It left open the question of what is required to establish a causal link.
¶ 49 Indoor Billboard argues that Hangman Ridge established that a plaintiff need only show that it lost money to show causation, relying again on Pickett I. However, as we have already noted, this court subsequently reversed Pickett I on other grounds, finding Pickett I's analysis of causation suspect. See Pickett II, 145 Wash.2d at 191, 35 P.3d 351. Pickett I held that "[c]ausation inheres in the fact that the plaintiffs purchased cruise tickets." Pickett I, 101 Wash.App. at 920, 6 P.3d 63. It reasoned that because the CPA was to be liberally construed and the cruise ship line had imposed fees that were clearly not what it said they were, "[a]ny other interpretation would effectively undermine class actions based on the Washington CPA." Id. Pickett II called Pickett I's conclusion that causation is established if the plaintiff shows that he or she loses money "debatable" and commented that the cases Pickett I cited did not support the appellate court's conclusion. Pickett II, 145 Wash.2d at 197, 35 P.3d 351. It concluded that "[u]nder the posture of [the] case, . . . this is a debatable question without clear answer under Washington law at the time of the parties' settlement and presented a risk to the Plaintiffs class favoring settlement." Id. (emphasis added). Although we agree the CPA is to be liberally construed, Pickett I carries this construction too far. Therefore, we reject Indoor Billboard's argument that causation may be established merely by a showing that money was lost.
¶ 50 Integra argues that proof that the reliance requirement survives Hangman Ridge is found in Robinson. However, Robinson involved a failure to disclose, not an affirmative misrepresentation, so it does not support Integra's argument. 106 Wash.App. at 119, 22 P.3d 818.
¶ 51 WSTLA and the AG suggest that Hangman Ridge replaced the reliance/inducement requirement with a proximate cause standard. Br. of Amicus Curiae WSTLA at 8-9 (citing 6A Washington Practice: Washington Pattern Jury Instructions: Civil 310.07, at 274 (5th ed. 2005) (WPI); Wash. State Physicians Ins. Exch. & Ass'n v. Fisons Corp., 122 Wash.2d 299, 314, 858 P.2d 1054 (1993); Schmidt v. Cornerstone Invs., Inc., 115 Wash.2d 148, 167-68, 795 P.2d 1143 (1990)); Br. of Amicus Curiae AG at 12-13 (citing Fisons, 122 Wash.2d at 314, 858 P.2d 1054; WPI 310.07, at 274-75).
¶ 52 "`Proximate cause'" is defined in WPI 310.07 as a "cause which in direct sequence [unbroken by any new independent cause] produces the injury complained of and without which such injury would not have happened. [There may be one or more proximate causes of an injury.]." In the comments, WPI 310.07 cites this court's holding in Pickett II in which we stated, "[w]hether individual reliance is required for causation under the CPA is a `debatable question without a clear answer under Washington law.'" WPI 310.07, at 274 cmt. (quoting Pickett II, 145 Wash.2d at 197, 35 P.3d 351). The comments also cite to WPI 15.01 for the traditional definition of "`proximate cause.'" WPI 310.07, at 274 cmt. The comments under WPI 15.01 indicate that this court favors the "`direct sequence'" and "`but for'" definitions of "`proximate cause.'" 6 WPI 15.01, at 182 cmt. (5th ed.2005) (citing Alger v. Mukilteo, 107 Wash.2d 541, 730 P.2d 1333 (1987)) ("`direct sequence'"); Tyner v. Dep't of Soc. & Health Servs., 141 Wash.2d 68, 82, 1 P.3d 1148 (2000) ("`but for'") (internal quotation marks omitted) (quoting Schooley v. Pinch's Deli Mkt., Inc., 134 Wash.2d 468, 478, 951 P.2d 749 (1998)). Applying WPI 15.01 to the causation analysis for a CPA claim, a plaintiff would have to establish that but for the defendant's unfair or deceptive act or practice the plaintiff's injury would not have occurred.
¶ 53 Two cases, Schmidt and Fisons, that postdate Hangman Ridge applied the proximate cause standard articulated in WPI 15.01.
¶ 54 Schmidt involved a defendant who attempted to sell property that was in disrepair based on an inflated appraisal. 115 Wash.2d at 167, 795 P.2d 1143. We held that causation was established because the *22 "[p]laintiffs testified at various stages throughout the litigation that had they not been shown the inflated appraisal, they never would have made the investment which led to the injury now complained of." Id. at 168, 795 P.2d 1143. Integra argues Schmidt did not eliminate the reliance test because the concept of reliance was implicit in the court's ruling. But Schmidt's description is compatible with the definition of "`proximate cause'" in WPI 15.01 because it effectively concluded that, but for the defendant's inflated appraisal, the plaintiffs would not have made the investment.
¶ 55 Fisons involved a physician who brought a claim against a drug company alleging that the drug company had engaged in unfair or deceptive act or practices by failing to warn the physician of the dangers related to a drug he prescribed to his patients. 122 Wash.2d at 311, 858 P.2d 1054. The issue was whether the jury was properly instructed that it had to find that the defendant's "unfair or deceptive act or practice was a proximate cause of the injury" to the plaintiff, not whether reliance on the unfair or deceptive act or practice was part of the causation element of a CPA claim. Id. at 314, 858 P.2d 1054. Integra argues Fisons is not analogous because it involved a failure to warn rather than a claim of affirmative misrepresentation and a failure to warn does not implicate the reliance standard because a party cannot rely on something it was never aware of in the first place. However, Fisons clearly acknowledged that a proximate cause jury instruction was appropriate with respect to the causation element of a CPA claim. Id.
¶ 56 We conclude where a defendant has engaged in an unfair or deceptive act or practice, and there has been an affirmative misrepresentation of fact, our case law establishes that there must be some demonstration of a causal link between the misrepresentation and the plaintiff's injury. Indoor Billboard urges us to adopt a per se rule and hold that payment of Integra's invoice is per se sufficient to establish the proximate cause of plaintiff's damages. We reject Indoor Billboard's per se rule because mere payment of an invoice may not establish a causal connection between the unfair or deceptive act or practice and plaintiff's damages. Proximate cause is a factual question to be decided by the trier of fact. Payment of an invoice may or may not be sufficient to establish a causal connection between the misrepresentation of fact and damages, but payment of the invoice may be considered with all other relevant evidence on the issue of proximate cause.
¶ 57 We hold that the proximate cause standard embodied in WPI 15.01 is required to establish the causation element in a CPA claim. A plaintiff must establish that, but for the defendant's unfair or deceptive practice, the plaintiff would not have suffered an injury.
b. Are there genuine issues of material fact regarding a causal link between Integra's unfair or deceptive act or practice and Indoor Billboard's injury, precluding summary judgment for Integra?
¶ 58 Although its primary argument is that it need only show that it paid Integra's invoice to demonstrate causation, Indoor Billboard alternatively argues that the evidence of record is sufficient to establish genuine issues of material fact regarding causation to submit the question to a jury. Indoor Billboard points primarily to Shulevitz's deposition testimony that he relied on and was confused by information provided by Integra in deciding to purchase Integra's services. Indoor Billboard argues that Shulevitz paid the invoice only because he was "reluctant to contest a charge on his very first bill at the start of a multi-year contractual relationship." Br. of Appellant at 45. It further argues that Shulevitz's actions did not break the causal link between Integra's unfair or deceptive act or practice and Indoor Billboard's injury because the research was only necessary to dispel Shulevitz's confusion and the question should more properly be decided by a jury.
¶ 59 Integra maintains that Shulevitz knew that Integra's PICC was unrelated to the FCC before it signed the agreement for Integra's services. Integra asserts Shulevitz knew the PICC was charged to all customers regardless of whether they received interexchange *23 services from Integra and that the PICC was set by the company rather than the FCC. Further, Integra argues that Indoor Billboard did not challenge Integra's PICC until after it had received the first invoice, even though it could have chosen not to purchase Integra's services in the first place. Lastly, Integra argues that Indoor Billboard based its decision to challenge Integra's PICC on information it obtained primarily from external sourcesnot from Integra.
¶ 60 We conclude it is not clear whether Integra's actions caused Indoor Billboard's injuries or whether Indoor Billboard's injuries were the result of its reliance on information it obtained from Shulevitz's investigation, as in Nuttall. The evidence in the record is sufficient to demonstrate that genuine issues of material fact exist regarding a causal link between Integra's unfair or deceptive acts or practices and Indoor Billboard's injuries. We hold that summary judgment was inappropriate and remand the matter for trial.
3. Is Indoor Billboard's claim barred by the voluntary payment doctrine?
¶ 61 As an affirmative defense to Indoor Billboard's CPA claim, Integra relies on the voluntary payment doctrine set out in a 1940 case that stated, "`money voluntarily paid under a claim of right to the payment, and with full knowledge of the facts by the person making the payment, cannot be recovered back on the ground that the claim was illegal, or that there was no liability to pay in the first instance.'" Speckert v. Bunker Hill Ariz. Mining Co., 6 Wash.2d 39, 52, 106 P.2d 602 (1940) (quoting 21 Ruling Case Law 141-42 (1918)). But there is an exception.
"The general rule that a voluntary payment cannot be recovered back has no application where the payment was induced by fraud on the part of the payee, for, subject to the general rules as to what constitutes fraud, it is a well settled rule that, where a payment of money which the payee ought not to retain is induced by fraud and deceit, it may be recovered back by the payor, and if the fraud is the inducement for the payment, the rule applies although it is not the sole producing cause."
Id. at 53, 106 P.2d 602 (quoting 48 C.J. Payment § 311, at 753-54 (1929)).
¶ 62 Integra argues that Indoor Billboard paid Integra's invoice knowing that Integra's PICC was charged to all customers, regardless of whether they purchased interexchange service from Integra and knowing that the FCC did not set the amount of Integra's PICC. Integra further notes that Shulevitz conducted his own independent investigation into Integra's surcharge before agreeing to purchase Integra's services or pay Integra's invoices. Integra argues that because Indoor Billboard purchased Integra's services and paid the invoice knowingly, Indoor Billboard is barred under the voluntary payment doctrine from asserting a CPA claim.
¶ 63 Indoor Billboard questions whether an affirmative defense that is ordinarily asserted only in a contract context can be applied to a CPA claim at all. Nevertheless, it claims that even if we could apply the doctrine in the context of a CPA claim, it cannot be applied here because there is a genuine issue of material fact as to whether Shulevitz had "`full knowledge of all the facts,'" as required by the doctrine. Br. of Appellant at 48 (quoting Speckert, 6 Wash.2d at 52, 106 P.2d 602). It argues adjudication of the voluntary payment doctrine is inappropriate on summary judgment.
¶ 64 Indoor Billboard is correct that Washington courts have generally applied the voluntary payment doctrine only in the contract context. See, e.g., Hawkinson v. Conniff, 53 Wash.2d 454, 459-60, 334 P.2d 540 (1959); Shields v. Schorno, 51 Wash.2d 737, 739, 321 P.2d 905 (1958); Speckert, 6 Wash.2d at 40, 106 P.2d 602; Maxwell v. Provident Mut. Life Ins. Co. of Phila., 180 Wash. 560, 575-76, 41 P.2d 147 (1935); Mut. Sales Agency, Inc. v. Hari, 145 Wash. 236, 240-41, 259 P. 712 (1927). One Washington case from the Court of Appeals considered applying the doctrine in a CPA context, although it did not reach the issue because it decided the defendant did not engage in an unfair or deceptive practice. Robinson, 106 Wash.App. at 122, 22 P.3d 818.
*24 ¶ 65 We agree with Indoor Billboard that the voluntary payment doctrine is inappropriate as an affirmative defense in the CPA context, as a matter of law, because we construe the CPA liberally in favor of plaintiffs.

V. CONCLUSION
¶ 66 We affirm the trial court's denial of Integra's motion to dismiss for lack of subject matter jurisdiction.
¶ 67 We reverse the trial court's grant of summary judgment in favor of Integra and hold that Indoor Billboard established as a matter of law that Integra engaged in an unfair or deceptive act or practice. We also hold that genuine issues of material fact exist regarding a causal link between Integra's unfair or deceptive act or practice and Indoor Billboard's injury.
¶ 68 Lastly, we conclude the voluntary payment doctrine is not an appropriate affirmative defense to a CPA claim as a matter of law.
WE CONCUR: GERRY L. ALEXANDER, Chief Justice, and TOM CHAMBERS, CHARLES W. JOHNSON, SUSAN OWENS, BARBARA A. MADSEN, RICHARD B. SANDERS, JAMES M. JOHNSON and BOBBE J. BRIDGE, Justice.
NOTES
[1] Integra is an Oregon corporation that provides telephone and data services to Washington business customers. The caption on Indoor Billboard's complaint erroneously identifies Integra as a Washington corporation.
[2] ILECs are local exchange carriers that provided telecommunications services prior to February 8, 1996 under the Telecommunications Act of 1996, 47 U.S.C. § 251(h)(1).
[3] The "local loop" is "the outside telephone wires, underground conduit, telephone poles, and other facilities that link each telephone customer to the telephone network." CP at 378.
[4] Washington law defines CTCs by statute. But Integra acknowledges that the telecommunications industry also uses the term "competitive local exchange carrier" or CLEC to refer to such companies. CP at 396.
[5] Former RCW 80.36.320 provides:

(1) The commission shall classify a telecommunications company as a competitive telecommunications company if the services it offers are subject to effective competition. Effective competition means that the company's customers have reasonably available alternatives and that the company does not have a significant captive customer base. . . .
. . . .
(2) Competitive telecommunications companies shall be subject to minimal regulation. . . . The commission may also waive other regulatory requirements under this title for competitive telecommunications companies when it determines that competition will serve the same purposes as public interest regulation. The commission may waive different regulatory requirements for different companies if such different treatment is in the public interest.
[6] WAC 480-80-204 requires the price list to include such things as where services will be rendered, the effective date of the price list, the complete name, address, phone number, unified business identifier number, and, if available, the mail address and web page address of the issuing utility.
[7] Although the issue of the trial court's subject matter jurisdiction was raised in the cross appeal, we address it first.
[8] RCW 80.36.360 states, "[f]or the purposes of RCW 19.86.170, actions or transactions of competitive telecommunications companies, or associated with competitive telecommunications services, shall not be deemed otherwise permitted, prohibited, or regulated by the commission."