FILED
COURT OF APPEALS DIV I
STATE OF WASHINGTON

2018 JUN -4 AM 10: 39

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| FOLWEILER CHIROPRACTIC, PS, a Washington professional services corporation, | ) ) ) | No. 75864-1-I |
| | ) | DIVISION ONE |
| Appellant, | ) ) | |
| v. | ) ) | UNPUBLISHED OPINION |
| FAIR HEALTH, INC., a New York corporation, | ) ) ) | |
| | ) | |
| Respondent. | ) | FILED: June 4, 2018 |
| | ) | |

LEACH, J. — Folweiler Chiropractic PS sued FAIR Health Inc., alleging a violation of Washington's Consumer Protection Act[1] (CPA). Folweiler appeals the trial court's summary judgment dismissal of this claim and denial of its motion to continue. FAIR Health, in turn, appeals the trial court's assertion of specific personal jurisdiction over it and the denial of its request for attorney fees under the long-arm statute.

Because FAIR Health does not have contacts with Washington sufficiently connected to this lawsuit, Washington courts do not have personal jurisdiction over it. If we had personal jurisdiction to decide this case on the merits, we would affirm. Folweiler does not show an issue of fact about two elements of its

---

[1] Ch. 19.86 RCW.

CPA claim: (1) that FAIR Health committed an unfair or deceptive act or practice and (2) that act or practice caused Folweiler's alleged injury. Also, the long-arm statute entitles FAIR Health to attorney fees incurred in this litigation, including fees on appeal. We affirm the dismissal, but we remand so the trial court can award these fees.

## FACTS

FAIR Health is a New York nonprofit corporation. FAIR Health was created as part of a settlement between UnitedHealth Group and the New York State Attorney General after an investigation of Ingenix Inc. This company performed much the same function that FAIR Health now does. The New York Attorney General determined that Ingenix, as a wholly owned subsidiary of UnitedHealth Group Incorporated, had a conflict of interest. FAIR Health was designed to operate independently of any insurer.

Fair Health provides an independent, impartial source of data about the cost of health care procedures. It educates consumers and offers them free tools to make it easier for them to estimate out-of-network expenses, disseminates its data to all health care participants to promote fair billing and reimbursement practices, and makes its data available for policy making and academic research.

FAIR Health developed a national database with the help of academic experts, statisticians, and health care economists. The database contains health care charges for privately insured individuals. The database includes the actual, nondiscounted fees charged by providers before network discounts or other allowances are applied. FAIR Health maintains its database by collecting data from health insurers and plan administrators, including Washington insurers, who license the database for use in paying claims. FAIR Health organizes the data based on "geo-zips," the first three digits of providers' zip codes, and a specific procedure's current procedural terminology (CPT) code.[2]

Folweiler is a Washington professional services corporation that provides chiropractic and massage therapy care in Washington. Folweiler provided care to patients with personal injury protection (PIP) coverage under an automobile insurance policy issued in Washington by Progressive Insurance. The PIP statute requires insurers to pay all reasonable bills submitted.[3] Insurers must investigate if a bill is reasonable before refusing to pay it in full.[4] Mitchell Medical, a California company that does business in California, reviewed

---

[2] The American Medical Association assigns a CPT code to every type of medical procedure.
[3] RCW 48.22.085, .005(7).
[4] WAC 284-30-330.

No. 75864-1-I / 4

Folweiler's bills for Progressive.[5]  Folweiler alleges that Mitchell used the FAIR Health database to automatically reduce its bills to the 90th percentile of the charges for the same procedure in the same geographical area.  Progressive then determined that Folweiler's charge of $95 for a certain procedure was unreasonable and instead reimbursed it at the 90th percentile level, which was $91.

Folweiler sued FAIR Health, alleging a CPA violation.[6]  The trial court denied FAIR Health's motion to dismiss for lack of personal jurisdiction.  The court granted Folweiler's motion for class certification.  Both parties moved for partial summary judgment on the issue of liability.  The motions were set to be argued together.  Folweiler asked the court to delay consideration of FAIR Health's motion so Folweiler could do further discovery but to proceed to hear Folweiler's own motion.  The trial court denied the continuance request.  It considered both summary judgment motions at the same time.  The trial court granted FAIR Health's motion and denied Folweiler's.

Both Folweiler and FAIR Health appeal the trial court's various decisions.

---

[5] The record does not establish that Mitchell is a California company, but the parties apparently agree that this is the case.

[6] Folweiler also sued Progressive insurance companies, alleging a violation of the CPA.  The parties settled the case. Folweiler Chiropractic, PS v. Progressive Max Ins. Co., No. 15-2-17846-6 SEA (King County Super. Ct., Wash.) (docket nos. 44, 45).

-4-

## ANALYSIS

### I. Jurisdiction

Due process limits a state court's authority to proceed against a defendant.[7] Thus, we first must consider FAIR Health's personal jurisdiction challenge. We conclude that Washington state courts do not have personal jurisdiction over FAIR Health in this matter.

We review the denial of a motion to dismiss for lack of personal jurisdiction de novo.[8] "When a motion to dismiss for lack of personal jurisdiction is resolved without an evidentiary hearing, the plaintiff's burden is only that of a prima facie showing of jurisdiction."[9] Even when the trial court has considered matters outside the pleadings, "'[f]or purposes of determining jurisdiction, this court treats the allegations in the complaint as established.'"[10] For matters outside the pleadings, this court draws reasonable inferences in the light most favorable to the nonmoving party.[11]

---

[7] Noll v. Am. Biltrite Inc., 188 Wn.2d 402, 411, 395 P.3d 1021 (2017) (quoting Goodyear Dunlop Tires Operations, SA v. Brown, 564 U.S. 915, 923, 131 S. Ct. 2846, 180 L. Ed. 2d 796 (2011)).

[8] State v. LG Elecs., Inc., 186 Wn.2d 169, 176, 375 P.3d 1035 (2016).

[9] LG Elecs., 186 Wn.2d at 176.

[10] State v. LG Elecs., Inc., 185 Wn. App. 394, 406, 341 P.3d 346 (2015) (alteration in original) (quoting Freestone Capital Partners LP v. MKA Real Estate Opportunity Fund I, LLC, 155 Wn. App. 643, 654, 230 P.3d 625 (2010)), aff'd, 186 Wn.2d 169, 375 P.3d 1035 (2016).

[11] State v. AU Optronics Corp., 180 Wn. App. 903, 912, 328 P.3d 919 (2014).

"Under Washington's long arm jurisdiction statute, RCW 4.28.185, personal jurisdiction exists in Washington over nonresident defendants and foreign corporations as long as it complies with federal due process."[12] Due process allows Washington courts to exercise jurisdiction over a nonresident defendant so long as: (1) purposeful minimum contacts exist between the defendant and the forum state, (2) the plaintiff's injuries arise out of or relate to those minimum contacts, and (3) the exercise of jurisdiction is consistent with notions of fair play and substantial justice.[13] If the plaintiff satisfies the first two prongs, the burden shifts to the defendant to set forth a compelling case that the exercise of jurisdiction would not be reasonable.[14]

Depending on the facts and the claims, Washington courts may have either general or specific personal jurisdiction over a defendant corporation.[15] A state court has general jurisdiction to decide claims against a defendant corporation when that corporation's contacts with the state are so significant that it is essentially at home in the forum state.[16] A corporate defendant is "at home" in the place of the corporation's incorporation and its principal place of

---

[12] Noll, 188 Wn.2d at 411.

[13] LG Elecs., 186 Wn.2d at 176-77.

[14] AU Optronics, 180 Wn. App. at 914-15.

[15] FutureSelect Portfolio Mgmt., Inc. v. Tremont Grp. Holdings, Inc., 175 Wn. App. 840, 886, 309 P.3d 555 (2013), aff'd, 180 Wn.2d 954, 331 P.3d 29 (2014).

[16] Goodyear, 564 U.S. at 919.

business.[17] Also, in an exceptional case, a corporation's operations in a state may be so substantial and of such a nature to make it at home there.[18] Folweiler does not claim that Washington courts have general jurisdiction over FAIR Health. So we consider whether Washington courts have specific jurisdiction over FAIR Health in this case.

The court may exercise specific jurisdiction over a nonresident based on the nonresident's more limited but claim-specific contacts with the state.[19] Specific jurisdiction requires a connection between the forum and the controversy.[20] In addition, "the relationship must arise out of contacts that the 'defendant himself' creates with the forum State."[21]

The Supreme Court of the United States most recently explained the requirements of specific personal jurisdiction in Bristol-Myers Squibb Co. v. Superior Court of California.[22] The Court noted that specific jurisdiction requires an "'affiliation between the forum and the underlying controversy, principally, [an]

---

[17] BNSF Ry. v. Tyrrell, __ U.S. __, 137 S. Ct. 1549, 1558, 198 L. Ed. 2d 36 (2017).
[18] Tyrrell, 137 S. Ct. at 1558.
[19] FutureSelect, 175 Wn. App. at 886.
[20] Bristol-Myers Squibb Co. v. Superior Court of Cal., __ U.S. __, 137 S. Ct. 1773, 1781, 198 L. Ed. 2d 395 (2017).
[21] Walden v. Fiore, 571 U.S. 277, 134 S. Ct. 1115, 1122, 188 L. Ed. 2d 12 (2014) (quoting Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475, 105 S. Ct. 2174, 85 L. Ed. 2d 528 (1985)).
[22] __ U.S. __, 137 S. Ct. 1773, 1779-81, 18 L. Ed. 2d 395 (2017).

activity or an occurrence that takes place in the forum State.'"[23] The court expressly rejected use of a "sliding scale approach" to decide specific jurisdiction issues.[24] This means that a corporation's continuous activity within a state cannot make up for the lack of an adequate link between that activity and the claims made in the case.[25]

The trial court found that FAIR Health's actions were sufficient to subject it to specific jurisdiction:

> I am persuaded that the defendant's collection, compilation and use of data that is Zip Code specific constitutes a sufficiently purposeful involvement in the state of Washington such that being held to answer to claims concerning related conduct in the courts of this state does not offend traditional notions of fair play and substantial justice.

Relying on Bristol-Myers Squibb, we disagree.

FAIR Health has contacts in Washington. But they are not sufficiently connected to the claims made in this lawsuit to make the exercise of specific personal jurisdiction appropriate. As the trial court observed, FAIR Health's product is organized geographically and it collects data from Washington to be used in Washington. But FAIR Health had no direct contact with Progressive or

---

[23] Bristol-Myers Squibb, 137 S. Ct. at 1780 (alteration in original) (quoting Goodyear, 564 U.S. at 919).

[24] Bristol-Myers Squibb, 137 S. Ct. at 1778, 1781 (quoting Bristol-Myers Squibb Co. v. Superior Court of Cal., 1 Cal. 5th 783, 806, 377 P.3d 874, 206 Cal. Rptr. 3d 636 (2016)).

[25] Bristol-Myers Squibb, 137 S. Ct. at 1781.

the health care providers included in the class of plaintiffs. FAIR Health collects data in Washington from health insurers and third-party administrators. FAIR Health does not collect data from auto insurers, like Progressive, or health care providers, like the class members. FAIR Health has customers in Washington, but the class's claims did not arise out of those contacts. The class bases its claims on a contract that FAIR Health had with Mitchell, a company located in California. Mitchell had a contract with Progressive that had a contract with Folweiler's patient. Under these facts, FAIR Health's contacts with Washington are not sufficiently connected to the claims made in this lawsuit to make the exercise of personal jurisdiction proper.

Folweiler claims that Washington courts have personal jurisdiction under a stream of commerce theory. In State v. LG Electronics, Inc.,[26] the Washington Supreme Court explained how the stream of commerce theory can be used to establish the purposeful minimum contacts required by the first prong of a due process analysis: "where a foreign manufacturer seeks to serve the forum state's market, the act of placing goods into the stream of commerce with the intent that they will be purchased by consumers in the forum state can indicate purposeful availment." Folweiler argues, under LG Electronics, that FAIR Health

---

[26] 186 Wn.2d 169, 177, 375 P.3d 1035 (2016) (citing J. McIntyre Mach., Ltd. v. Nicastro, 564 U.S. 873, 888-89, 131 S. Ct. 2780, 180 L. Ed. 2d 765 (2011) (Breyer, J., concurring).

is subject to personal jurisdiction in Washington because it placed its product in the stream of commerce and knew it would be used in the forum.[27]  But, in LG Electronics, the Washington Supreme Court expressly rejected the argument that "mere foreseeability that a product may end up in a forum state" allows specific jurisdiction.[28]  "Instead, the defendant's conduct and connection with the State must be such that it should reasonably anticipate being haled into court there."[29]

Folweiler does not show that the class's claims made in this lawsuit are sufficiently connected to FAIR Health's contacts with Washington to make the exercise of personal jurisdiction proper.

## II. Consumer Protection Act Claims

Even if Washington courts had personal jurisdiction over FAIR Health, we would affirm dismissal because Folweiler fails to show a material issue of fact that would entitle it to a trial.

Both Folweiler and FAIR Health moved for summary judgment on the CPA claim.  A party moving for summary judgment has the initial burden to show no genuine issue of fact exists.[30]  The burden then shifts to the nonmoving party to "set forth specific facts to rebut the moving party's contentions and show that a

---

[27] See LG Elecs., 186 Wn.2d at 177.
[28] LG Elecs., 186 Wn.2d at 177.
[29] LG Elecs., 186 Wn.2d at 178.
[30] Young v. Key Pharm., Inc., 112 Wn.2d 216, 225, 770 P.2d 182 (1989).

genuine issue as to a material fact exists."[31] Summary judgment is proper if, viewing the facts and reasonable inferences in the light most favorable to the nonmoving party, no genuine issues of material fact exist and the moving party is entitled to judgment as a matter of law.[32] A genuine issue of material fact exists if reasonable minds could differ about the facts controlling the outcome of the litigation.[33] We review summary judgment orders de novo, engaging in the same inquiry as the trial court.[34]

The CPA prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce."[35] To prevail on a CPA claim, the plaintiff must show (1) an unfair or deceptive act or practice, (2) occurring in trade or commerce, (3) a public interest impact, (4) injury to the plaintiff's business or property, and (5) a causal link between the unfair or deceptive act and the injury.[36] The parties dispute the first and fifth elements

---

[31] Allard v. Bd. of Regents of Univ. of Wash., 25 Wn. App. 243, 247, 606 P.2d 280 (1980).

[32] CR 56(c); Michak v. Transnation Title Ins. Co., 148 Wn.2d 788, 794-95, 64 P.3d 22 (2003).

[33] Hulbert v. Port of Everett, 159 Wn. App. 389, 398, 245 P.3d 779 (2011).

[34] Michak, 148 Wn.2d at 794. Although Folweiler acknowledges the standard of review is de novo, it nevertheless spends much of its argument critiquing the trial court's analysis. These arguments do not matter to our analysis.

[35] RCW 19.86.020.

[36] Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co., 105 Wn.2d 778, 780, 719 P.2d 531 (1986).

here. Because Folweiler does not create a factual issue about either element, the trial court properly granted summary judgment to FAIR Health. This means that the trial court correctly denied Folweiler's summary judgment motion.[37]

*Admissibility of Evidence*

Preliminarily, FAIR Health challenges admissibility of certain evidence and contends that the trial court improperly relied on inadmissible evidence. Courts may consider only admissible evidence when ruling on a motion for summary judgment.[38] "The trial court has wide discretion in ruling on the admissibility of expert testimony."[39]

First, FAIR Health contends that the trial court should not have considered the declarations of Brendan Burke and Paul Torelli because Folweiler did not disclose these witnesses until after it filed its motion for summary judgment. FAIR Health provides no evidence to support this claim, so we disregard it.[40]

Second, FAIR Health contends that Folweiler improperly supported its motion with deposition transcripts from other cases. FAIR Health claims that the depositions are inadmissible under CR 32 and ER 802 but offers no legal

---

[37] Because we decide that the trial court properly dismissed the suit, we do not reach FAIR Health's challenge to class certification.

[38] King County Fire Prot. Dist. No. 16 v. Hous. Auth., 123 Wn.2d 819, 826, 872 P.2d 516 (1994).

[39] Moore v. Hagge, 158 Wn. App. 137, 155, 241 P.3d 787 (2010).

[40] RAP 10.3(a)(6); Cowiche Canyon Conservancy v. Bosley, 118 Wn.2d 801, 809, 828 P.2d 549 (1992).

argument in its appellate briefing. Further, it does not identify the depositions it objects to. Thus, we also disregard this argument.[41]

Third, FAIR Health contends that the Burke declaration is conclusory, speculative, and lacks adequate foundation. "'It is well established that conclusory or speculative expert opinions lacking an adequate foundation will not be admitted.'"[42] FAIR Health asserts that Burke has no stated experience with health care charges or FAIR Health data products and thus lacks foundation for his opinions. But Burke attests that he holds a PhD in mathematics and specializes in the application of economics, statistics, and econometrics. The court properly exercised its discretion in deciding to consider the Burke declaration.

FAIR Health does not show that the trial court improperly relied on inadmissible evidence.

*Unfair or Deceptive Act or Practice*

Next, we consider whether a question of fact exists about the unfair or deceptive act or practice element of a CPA claim. Whether conduct is an unfair

---

[41] Farmer v. Davis, 161 Wn. App. 420, 432, 250 P.3d 138 (2011) (stating that if appellate brief lacks citations to legal authority and references to the record, the court will not consider the argument).

[42] Moore, 158 Wn. App. at 155 (quoting Safeco Ins. Co. v. McGrath, 63 Wn. App. 170, 177, 817 P.2d 861 (1991)).

or deceptive act or practice prohibited by the CPA is a question of law.[43] The CPA does not define "unfair" or "deceptive," so the Supreme Court "has allowed the definitions to evolve through a 'gradual process of judicial inclusion and exclusion.'"[44] To decide whether a practice is unfair or deceptive, Washington courts can be guided by federal court decisions applying the Federal Trade Commission Act (FTCA).[45] Under the FTCA, a practice is unfair if it "'"causes or is likely to cause substantial injury to consumers which is not reasonably avoidable by consumers themselves and not outweighed by countervailing benefits."'"[46] "Deception exists 'if there is a representation, omission or practice that is likely to mislead' a reasonable consumer."[47] "A plaintiff need not show the act in question was intended to deceive, only that it had the capacity to deceive a substantial portion of the public.[48]

---

[43] Panag v. Farmers Ins. Co. of Wash., 166 Wn.2d 27, 47, 204 P.3d 885 (2009).

[44] Klem v. Wash. Mut. Bank, 176 Wn.2d 771, 785, 295 P.3d 1179 (2013) (internal quotation marks omitted) (quoting Saunders v. Lloyd's of London, 113 Wn.2d 330, 344, 779 P.2d 249 (1989)).

[45] 15 U.S.C. §§ 41-58; Panag, 166 Wn.2d at 47; Testo v. Russ Dunmire Oldsmobile, Inc., 16 Wn. App. 39, 50, 554 P.2d 349 (1976).

[46] Rush v. Blackburn, 190 Wn. App. 945, 963, 361 P.3d 217 (2015) (quoting Klem, 176 Wn.2d at 787 (quoting 15 U.S.C. § 45(n))).

[47] Panag, 166 Wn.2d at 50 (quoting Sw. Sunsites, Inc. v. Fed. Trade Comm'n, 785 F.2d 1431, 1435 (9th Cir. 1986)).

[48] Panag, 166 Wn.2d at 47.

Folweiler contends that FAIR Health engaged in unfair practices by licensing its database to companies that it knew would use it to violate the CPA. Essentially, Folweiler claims that because the database is not suitable for the purpose for which it claims that Mitchell and Progressive used it (i.e., determining usual, customary, and reasonable rates for Washington providers), FAIR Health acted unfairly by licensing the data to Mitchell. Folweiler makes a number of arguments to show that the database is not suited for the purpose Mitchell and Progressive used it.[49] But FAIR Health's user guide also contains a disclaimer, explaining the limitations on the use of the database:

> The data provided in the FAIR Health product modules[ ] should be used only for informational purposes consistent with the terms of client's license to use such data. FAIR Health is not determining, developing or establishing an appropriate fee or reimbursement levels for client and its business. Rather, the data represents charge benchmarks for various geographic areas based on the claims data contributed to FAIR Health. The data, including each of the FAIR Health product modules, is not a fee schedule and should not be used as a substitute for client's own judgment in setting reimbursement rates. Indeed, it is the client's responsibility to ascertain the suitability of the data for the client's purposes. FAIR Health disclaims any endorsement, approval, or recommendation of

---

[49] Folweiler asserts that FAIR Health uses the same flawed system as Ingenix, specifically claiming the data was flawed in the following ways: (1) the geo-zip data does not correspond to a reasonable medical market because each geo-zip encompasses an area with a variety of communities with access to a range of resources, (2) the data does not include data from all health care providers in the geo-zip or one charge for every amount charged for the same treatment or procedure, (3) FAIR Health does not collect data from auto insurers, and (4) the data does not include information about a provider's credentials, certifications, or years of experience.

> data in the modules.  Any reliance upon, interpretation of and/or use of the data by client to establish a fee schedule or set a rate is in client's sole discretion.

The parameters that FAIR Health set for the use of its product show that it did not act unfairly when it licensed its product.

Folweiler contends that the user guide should not be used as evidence of FAIR Health's intent.  Folweiler correctly notes that intent is not required to show an unfair or deceptive practice.[50]  But the user guide is still evidence of what the product is, what it is not, and how it should be used.  In light of the user guide, Folweiler's argument that FAIR Health's product is flawed fails.

Folweiler compares this case to Federal Trade Commission v. Neovi, Inc.,[51] a Ninth Circuit decision interpreting federal trade statutes.  We distinguish Neovi.  Neovi discusses causation but is useful in deciding whether the act in question is unfair or deceptive.  There, the defendant Qchex operated a website that allowed users to create and deliver unverified checks drawn on unauthorized accounts.[52]  The court found causation where the defendant "created and controlled a system that facilitated fraud and that the company was on notice as to the high fraud rate."[53]  The court emphasized that Qchex was not liable under a theory of "aiding and abetting" but had itself "caused harm through its own

---

[50] Panag, 166 Wn.2d at 47.
[51] 604 F.3d 1150 (9th Cir. 2010).
[52] Neovi, 604 F.3d at 1154-55.
[53] Neovi, 604 F.3d at 1155.

deeds."[54] The court explained that Qchex "engaged in behavior that was, itself, injurious to consumers" by "creating and delivering unverified checks."[55] Unlike Neovi, this case does not involve an unfair act by FAIR Health itself.

CPA liability does not extend to a party that compiles data and clearly explains the limitations of that data simply because a licensee ignores those limitations and later uses it improperly. FAIR Health's conduct was not unfair or deceptive under the CPA.

*Proximate Cause*

Next, Folweiler challenges the trial court's conclusion about proximate cause. Proximate cause generally has two elements: "but for" or factual causation and legal causation.[56] Whether the defendant's acts were a "but for" cause of injury is typically a question of fact for the jury.[57] But when the facts are undisputed and the inferences from them are not subject to any reasonable difference of opinion, the question of "but for" cause becomes a question of law.[58] Legal causation is a question of law for the court.[59]

---

[54] Neovi, 604 F.3d at 1157.
[55] Neovi, 604 F.3d at 1157.
[56] Michaels v. CH2M Hill, Inc., 171 Wn.2d 587, 610-11, 257 P.3d 532 (2011).
[57] Indoor Billboard/Wash., Inc. v. Integra Telecom of Wash., Inc., 162 Wn.2d 59, 84, 170 P.3d 10 (2007).
[58] Tae Kim v. Budget Rent A Car Sys., Inc., 143 Wn.2d 190, 203, 15 P.3d 1283 (2001); Ward v. Zeugner, 64 Wn.2d 570, 574-75, 392 P.2d 811 (1964).
[59] Tae Kim, 143 Wn.2d at 204.

In a footnote, FAIR Health claims that Folweiler cannot establish "but for" causation. It asserts that Progressive could have relied on other databases to reduce Folweiler's reimbursement. If FAIR Health is correct, it has identified a question of fact to be determined by the jury. We cannot conclude as a matter of law that FAIR Health was not the "but for" cause of the alleged injury.

But Folweiler has not shown legal causation. Folweiler claims that the CPA does not require a plaintiff to show legal causation. We disagree. Folweiler relies on our Supreme Court's comment in its discussion of the causation element in a CPA claim in Indoor Billboard/Washington, Inc. v. Integra Telecom of Washington, Inc.,[60] where the court stated that the causation element of the CPA requires a plaintiff to establish that "but for the defendant's unfair or deceptive practice, the plaintiff would not have suffered an injury." Folweiler asserts that this defines the causation test for the CPA and does not require legal causation. But Indoor Billboard does not stand for the proposition that the CPA requires only "but for" causation without the usual other legal causation prong. Indoor Billboard considered a contention that to prove causation under the CPA, the plaintiff had to show only that it paid invoices with allegedly improper surcharges.[61] The court decided that this was not enough because it did not

---

[60] 162 Wn.2d 59, 84, 170 P.3d 10 (2007).
[61] Indoor Billboard, 162 Wn.2d at 78.

satisfy the "but for" cause standard.[62] But the court did not address legal causation.[63] The CPA also requires legal causation.

To decide if legal causation exists, a court considers whether "'as a matter of policy, the connection between the ultimate result and the act of the defendant is too remote or insubstantial to impose liability.'"[64] The determination depends upon "'mixed considerations of logic, common sense, justice, policy, and precedent.'"[65] FAIR Health contends that the relationship was too remote because it provided only data, which did not cause the alleged injury. Assuming there was an injury, Mitchell's and Progressive's alleged misuse of the data caused it. We agree that the alleged injury here is too remote to support liability under the CPA. FAIR Health's user guide states that the data should not be used in the way that Mitchell and Progressive allegedly used it. Folweiler cannot establish FAIR Health's legal responsibility with evidence that Progressive and Mitchell chose to use the data in a way contrary to FAIR Health's instructions. Thus, Folweiler cannot establish legal causation.

---

[62] Indoor Billboard, 162 Wn.2d at 83

[63] See Indoor Billboard, 162 Wn.2d at 78-85.

[64] Michaels, 171 Wn.2d at 611.

[65] Michaels, 171 Wn.2d at 611 (internal quotation marks omitted) (quoting Schooley v. Pinch's Deli Mkt., Inc., 134 Wn.2d 468, 478-79, 951 P.2d 749 (1998)).

### III. Request for CR 56(f) Continuance

Folweiler next contends that the trial court improperly denied its CR 56 motion for a continuance. This court reviews a trial court decision on a motion to continue for manifest abuse of discretion.[66] CR 56(f) permits a court to order a continuance to allow a party opposing a motion to conduct discovery. Courts may deny a continuance motion "when '(1) the requesting party does not offer a good reason for the delay in obtaining the desired evidence; (2) the requesting party does not state what evidence would be established through the additional discovery; or (3) the desired evidence will not raise a genuine issue of material fact.'"[67] Folweiler sought the continuance after it had already moved for summary judgment on liability. Yet, it argues that the trial court "refus[ed] to give Folweiler a fair opportunity to prove its CPA claims." The fact that Folweiler had previously moved for summary judgment on the exact issues on which it claims it needed more discovery undermines its argument. Under these circumstances, the trial court did not abuse its discretion when it denied Folweiler's continuance motion.

---

[66] Coggle v. Snow, 56 Wn. App. 499, 504, 784 P.2d 554 (1990).
[67] Pitzer v. Union Bank of Cal., 141 Wn.2d 539, 556, 9 P.3d 805 (2000) (internal quotation marks omitted) (quoting Tellevik v. 31641 W. Rutherford St., 120 Wn.2d 68, 90, 838 P.2d 111, 845 P.2d 1325 (1992)).

## IV. Attorney Fees

FAIR Health appeals the trial court's denial of its request for attorney fees and costs under Washington's long-arm statute. When a defendant is personally served outside the state and prevails in the action, RCW 4.28.185(5) permits the court to award as attorney fees, reasonable costs of defending the action. One purpose of this provision is to compensate defendants for the added expense caused by plaintiff's assertion of long-arm jurisdiction.[68] "Such an award is discretionary and is limited to the amount necessary to compensate a foreign defendant for the added costs of litigating in Washington."[69]

Here, the trial court denied FAIR Health's request for fees and explained, "Given that this was a Washington CPA claim, that jurisdiction was found to be proper in Washington and that fees and costs may very well have been higher in [New York], the court declines to make any RCW 4.28.185 award." We agree that the court abused its discretion because no evidence indicates that it would have been more expensive for FAIR Health to litigate in New York. In fact, FAIR Health introduced evidence that it spent more litigating in Seattle because its Seattle-based counsel charged higher hourly rates than its New York-based

---

[68] Scott Fetzer Co. v. Weeks, 114 Wn.2d 109, 122, 786 P.2d 265 (1990).
[69] Payne v. Saberhagen Holdings, Inc., 147 Wn. App. 17, 36, 190 P.3d 102 (2008).

counsel. Thus, FAIR Health is entitled to attorney fees incurred in this litigation and also on appeal.[70]

## CONCLUSION

We affirm the dismissal of Folweiler's claims. We remand so the trial court can reconsider its attorney fee decision and award reasonable fees to FAIR Health.

_Leach, J._

WE CONCUR:

_Dwyer, J._

_Becker, J._

---

[70] RAP 18.1(a).